UNITED STATES of America, Appellee,

v.

John DOE, Defendant Appellant.

No. 98–1319.

United States Court of Appeals,
First Circuit.

Submitted Oct. 9, 1998.

Decided March 12, 1999.

Frank D. Inserni, by appointment of the court, on brief for appellant.

Guillermo Gil, United States Attorney, Nelson Perez–Sosa, Assistant United States Attorney, and Jose A. Quiles–Espinosa, Senior Litigation Counsel, on brief for the United States.

Before BOUDIN, Circuit Judge,
BOWNES, Senior Circuit Judge, and
LYNCH, Circuit Judge.

BOUDIN, Circuit Judge.

The defendant John Doe (a pseudonym for reasons that will become apparent) was convicted on November 4, 1994, of three counts of possession with intent to distribute cocaine. On January 27, 1995, he was sentenced to the statutory minimum sentence of ten years imprisonment. Doe was indicted again on June 14, 1995, for another drug offense and a plea agreement was executed in that second case on December 5, 1995. In that agreement, Doe agreed to cooperate with the United States and to provide it with information. In exchange, the government offered potential benefits to Doe in both cases.

Specifically, the government agreed to recommend that Doe's new sentence, not yet imposed, be served concurrently with his sentence in the earlier conviction and held out the possibility of filing a motion for a downward departure in both cases. *See* 18 U.S.C. § 3553(e); U.S.S.G. § 5K1.1; Fed. R.Crim.P. 35(b). At sentencing in the second case, the government did recommend that the sentences be served concurrently, but it declined to file any downward departure motion in either case.

Doe then sought in both cases specific performance of the plea agreement, alleging that the government was required to seek a reduced sentence because he had provided useful information to the government. A hearing was held. The government pointed out that it had explicitly retained in the agreement "sole discretion" over whether to file the motion, and that it believed that the defendant had started to cooperate too late.

Doe said in response that his cooperation was not too late—the government simply failed to follow up his information until any actions it could have brought based on his evidence were time-barred.

On July 31, 1997, the judges responsible for sentencing in both cases issued a joint opinion and order, finding that Doe had not colorably alleged that unconstitutional bias (*e.g.,* racial discrimination) lay behind the government's refusal to file the motions, and that they could not review the government's decision for any other reason, citing *Wade v. United States,* 504 U.S. 181, 185, 112 S.Ct. 1840, 118 L.Ed.2d 524 (1992). The defendant moved for reconsideration, which was denied in the first case on November 14, 1997. It is Doe's appeal from this denial which is now before us.[1]

■ It is clear that Doe did not colorably allege an unconstitutional bias on the part of the government, although provided full opportunity to do so. Nor do we think that his allegations, even if taken at face value, show that the government's refusal to file a substantial assistance motion "was not rationally related to any legitimate government end," *Wade,* 504 U.S. at 186, 112 S.Ct. 1840, the other potential ground left open by *Wade* for challenging the government's refusal to move for a downward departure. The motion is a reward for providing "substantial assistance"; a refusal to provide the reward, if the government got no benefit from the information, is hardly a decision "not rationally related" to a legitimate government end even if we assume that the police fumbled in failing to exploit whatever leads were given to them. Alternatively, the defendant argues that he is entitled to attack the government's refusal to move for a downward departure based on "bad faith"—at least where, as here, the government has signed a plea agreement. The agreement matters, he says, because the Supreme Court has said in other contexts that a plea agreement should be treated as a contract, *Santobello v. New York,* 404 U.S. 257, 92 S.Ct. 495, 30 L.Ed.2d

---

1. The court in the second case granted the defendant's motion, and held a five day hearing. A decision in that case issued quite recently and is discussed below.

427 (1971), and courts often say that an implied covenant of good faith is implicit in a contract.

*Wade* did not involve a plea agreement and so does not directly control this question, although it does have implications. The circuits appear to be divided on whether the government's refusal to move for downward departure under the standard plea agreement can be attacked on the grounds that it acted in bad faith where the allegations do not also qualify under *Wade*. Five circuits have assumed or acknowledged such an exception,[2] three circuits point the other way,[3] and most of the statements either way are dicta. This circuit has not squarely spoken.

Two members of the panel (Judge Boudin and Judge Lynch) are skeptical about whether a good faith exception makes sense or comports with the thrust of *Wade*, while a third member (Judge Bownes) favors the exception. In its favor are the facts that it can arguably be fitted within conventional contract doctrine and has the support of more circuits than the contrary view. It can also be argued that the Pandora's Box of collateral inquiries opened up by such an exception could be limited if a sufficiently high threshold were established for the allegations needed to trigger the inquiry.

On the other side, *Wade* may be read as expressing a very strong policy in favor of giving the government almost complete discretion to decide whether to seek a downward departure on substantial assistance grounds. It may also seem odd to rely heavily on the presence of a plea agreement where, as here, the agreement itself explicitly warns the defendant that the government has reserved "sole discretion" over the decision whether to move—a warning that comes about as close to negating any prospect of judicial review (outside of *Wade*) as one might reasonably expect.

Of course, one might question whether the government should be allowed to shield from review actions taken in "bad faith" but the practical concerns are real ones. Defendants, asked for information to incriminate others, have good reasons to fear for their safety and, unless the prosecutor holds the whip hand, the defendant may offer up some information and hold back the more vital balance in the hope that the court will find the government "unreasonable" and infer "bad faith." Further, an inquiry into the adequacy of cooperation, if one is pursued, almost certainly would require disclosure by the government as to other investigations, information that may be highly confidential and hard for a court to appraise.

■ We have laid out the concerns but think that resolution of the issue—to the extent that it can be resolved by a single, flat rule (obviously, the language of the agreement could affect the outcome)—should await a case in which resolution is essential. Here, even if "bad faith" were the standard, the defendant loses. The present allegations, even if fully accepted, amount to nothing more than the charge that the prosecutors or police were initially encouraged by information that Doe provided, were slothful in exploiting it and ultimately came away with nothing. Basically, this amounts simply to a claim that the government acted carelessly or unreasonably.

■ If a downward departure for substantial assistance could be ordered by the court under a reasonableness standard, virtually every refusal by the prosecutor would be open to judicial review so long as the defendant tendered some information. Practical considerations aside, this is clearly inconsistent with the intent of Congress and the Commission as construed in *Wade*, finds no purchase in the language of the standard plea agreement, and conflicts with precedent in numerous circuits rejecting the possibility

**2.** *United States v. Isaac*, 141 F.3d 477 (3d Cir. 1998); *United States v. Jones*, 58 F.3d 688, 692 (D.C.Cir.1995) (in dicta); *United States v. Stockdall*, 45 F.3d 1257, 1260 (8th Cir.1995); *United States v. Lee*, 989 F.2d 377, 380 (10th Cir.1993); *United States v. Rexach*, 896 F.2d 710 (2d Cir. 1990) (pre-*Wade* holding reaffirmed in dicta in

*United States v. Ming He*, 94 F.3d 782, 787 (2d Cir.1996)).

**3.** *United States v. Aderholt*, 87 F.3d 740, 742–43 (5th Cir.1996); *United States v. Forney*, 9 F.3d 1492 (11th Cir.1993) (in dicta); *United States v. Burrell*, 963 F.2d 976, 984–985 (7th Cir.1992).

of attacks for "arbitrariness" on government refusals to move for downward departures.[4]

■ Finally, we turn to Doe's argument that a specific provision of the plea agreement in this case cabined the discretion of the government and that a hearing was required to determine whether the government breached this provision. Although the agreement stated in paragraph 8 that a downward departure motion rested in the "sole" discretion of the government, it also stated in paragraph 5 that "the defendant's failure to 'make a case' shall not relieve the government of exercising its discretion" under Fed.R.Crim.P. 35(b) or section 5K1.1.

■ The government can, under *Santobello*, limit itself by contract and we think that there is some tension between the government's paragraph 5 promise and the statement of its counsel—if it was in fact made—that Doe's cooperation came too late. It is fairly easy in context to interpret "came too late" as "came too late for us to make a case." At the very least, there might appear to be a basis for further exploration of the matter in an evidentiary hearing.

Asked by us for a response, the government asserts that one can provide substantial assistance in various ways, other than by making a case; that in this instance Doe failed to provide substantial assistance; and—most important—that a new development coming after oral argument in this case confirms that Doe failed to provide substantial assistance. Specifically, the district judge in the companion case (*see* note 1, above) has recently concluded, after an evidentiary hearing, that Doe did not provide substantial assistance to the government following the plea agreement.

Without this latter finding, we might well have been inclined to remand to the district court to hold an evidentiary hearing on the question whether the government violated paragraph 5, but this course is now pointless. On any reading, the government certainly had no obligation to move for relief unless Doe provided substantial assistance, and it does not matter that this finding has been made by a different judge: it is binding as between Doe and the government unless set aside on appeal. *Cf. United States v. Weston*, 960 F.2d 212, 217 (1st Cir.1992); *Hernandez–Uribe v. United States*, 515 F.2d 20, 21–22 (8th Cir.1975).

The possibility remains that Doe may appeal the determination in the companion case. Accordingly, we make it explicit that our affirmance in this case rests, as to the contract claim, on the finding in the companion case. If Doe overturns that finding on appeal, he should move in this court for us to reopen this appeal, citing this explicit reservation. However, at the present time the finding in the companion case is an effective bar to any relief in this case.

*Affirmed.*

BOWNES, Senior Circuit Judge, concurring.

I concur in the result. The defendant here plainly failed to demonstrate unconstitutional motive or bad faith on the part of the government in declining to seek a downward departure. I write separately, however, to explain briefly why the rule of a majority of the circuits—which permits judicial review of an alleged bad-faith refusal by the government to file a § 5K1.1 motion pursuant to a cooperation agreement—makes good sense to me.

Plea agreements, because they are contracts, impose on each party a duty of good faith and fair dealing. *See, e.g., United States v. Isaac*, 141 F.3d 477, 484 (3d Cir. 1998) (holding that government's refusal to file § 5K1.1 motion violates plea agreement if attributable to bad faith); *United States v. Jones*, 58 F.3d 688, 692 (D.C.Cir.1995) (stating that substantial-assistance provision in plea agreement "provides additional protection" because "[l]ike all contracts, it includes an implied obligation of good faith and fair dealing").

---

4. *E.g., United States v. Romolo*, 937 F.2d 20, 24 (1st Cir.1991). *Romolo* reserved the question whether a government refusal could, in an exceptional case, be circumvented by a departure under U.S.S.G. § 5K2.0, the catch-all provision for departures. *Id.* at 25. Whether this reservation survives *Wade* is a question that need not be considered here where the facts are far from exceptional.

Under the typical plea agreement, a defendant promises to provide substantial assistance to the satisfaction of the government; in turn, a defendant has the right to expect that the government will make that evaluation in good faith. The government promises that, if it is satisfied with the defendant's cooperation, it shall make the defendant's efforts known to the sentencing judge by filing a § 5K1.1 letter. This motion is essential; without it, the sentencing judge ordinarily is without jurisdiction to depart downward and the cooperating defendant's efforts go unrewarded. Review of the government's decision ensures that the agreement is faithfully carried out by both sides. *See United States v. Papaleo*, 853 F.2d 16, 19 (1st Cir. 1988) ("A contractual approach to plea agreements ensures not only that constitutional rights are respected, but also that the integrity of the criminal process is upheld").

Recognizing that a remedy is available when the government breaks its conditional promise is wholly consistent with *Wade v. United States*, 504 U.S. 181, 112 S.Ct. 1840, 118 L.Ed.2d 524 (1992). In that case, the Supreme Court held that, in the absence of a plea agreement, a defendant is entitled to relief only if a prosecutor's decision not to file a substantial-assistance motion was motivated by an unconstitutional consideration or if the government's refusal "was not rationally related to any legitimate Government end." *Id.* at 186, 112 S.Ct. 1840. It would be strange indeed if a defendant had less protection where he actually obtained an binding cooperation agreement than where, as in *Wade*, no conditional promise to file a § 5K1.1 motion had been made by the government.

I do not share my fellow panel members' fear that inquiring whether the government has complied with the terms of a plea agreement in good faith would necessitate disclosure of confidential information in all cases or involve questions that are difficult for a court to assess. *Wade* itself provides a standard that is both rigorous and sufficiently protective of the government: a defendant must make a "substantial threshold showing" of unconstitutional motive or bad faith before he is entitled to discovery or an evidentiary hearing. *Id.* at 186, 112 S.Ct. 1840. This approach would prevent the dangerous prospect of a prosecutor who, after having elicited useful information by way of a plea agreement, deliberately chooses not to fulfill his end of the bargain knowing that his decision to renege is almost completely insulated from judicial scrutiny.

The contours of both sides of the debate now having been sketched out, I agree that resolution of the issue is best left for another day.