UNITED STATES of America,
Plaintiff,

v.

John DAVIS, Defendant.

No. CRIM. 00–10065–PBS.

United States District Court,
D. Massachusetts.

Sept. 15, 2000.

Pamela E. Berman, Choate, Hall & Stewart, Pamela E. Berman, Schnader, Harrison, Goldstein & Manello, Boston, MA, for John Davis, Defendants.

Ted Heinrich, United States Attorney's Office, Boston, MA, for U.S.

## MEMORANDUM AND ORDER [1]

SARIS, District Judge.

### INTRODUCTION

After pleading guilty pursuant to a plea agreement, Defendant John Davis moved to compel the government to file a motion for a downward departure under § 5K1.1 of the United States Sentencing Guidelines ("U.S.S.G."). He alleged that the government's refusal to so move was based on a constitutionally impermissible motive, namely, punishment for exercising his rights under the Speedy Trial Act ("STA"), 18 U.S.C. § 3161 et seq., in a related case. The Assistant United States Attorney ("AUSA") denied that he had any impermissible motive and argued that, in any event, he had only committed himself to raising the § 5K1.1 issue with the Substantial Assistance Committee (the "Com-

mittee") within the United States Attorney's Office ("USAO").

After two hearings and upon my request, the AUSA agreed to submit the matter to the Committee, which ultimately decided not to file a § 5K1.1 motion. Subsequently, I denied the motion to compel and the Defendant was sentenced to 48 months of incarceration. Because this case raises difficult issues of sentencing law, I give my reasons.

### BACKGROUND FACTS

AUSA Theodore B. Heinrich and Attorney Pamela E. Berman filed affidavits and a joint stipulation of facts regarding the sequence of events. Based on those affidavits, the Court treats the following facts as undisputed, except where noted. Neither counsel pressed for an evidentiary hearing because they agreed the salient material facts were undisputed.

The defendant was arrested on January 30, 1998 and charged with conspiring to distribute PCP and marijuana, in violation of 21 U.S.C. § 846, and for possessing with intent to distribute PCP and marijuana, in violation of 21 U.S.C. § 841(a)(1). See United States v. John Davis, Cr. No. 98–10032–GAO. Because of the amount of drugs involved (1.5 kilograms of PCP),[2] this indictment carried a minimum mandatory sentence of ten years. That case was dismissed with prejudice by Judge O'Toole on March 27, 2000 under the Speedy Trial Act, 18 U.S.C. § 3161 et seq.

While Mr. Davis's motion to dismiss under the STA was pending, the government filed the current indictment, which AUSA Heinrich called a "holding indictment" in case the STA motion was granted. Under the randomized computer system, the second indictment was assigned to me. It charges a single violation of 21 U.S.C. § 843(b) for transporting drugs through the United States mail. The statutory

---

1. The Court has deleted certain sensitive information which is contained in the complete opinion filed under seal.

2. Defendant's fingerprints were apparently found on the package in the controlled delivery by the United States Postal Service.

maximum sentence was 48 months. The charges in both cases arise out of the same facts and conduct.

Shortly after his arrest on the first indictment, Mr. Davis agreed to cooperate with federal authorities. Hoping to obtain relief from the sentence that might be imposed if he were convicted, [INFORMATION DELETED]. The defendant and the government entered into a proffer agreement, which acknowledged that "the making of a proffer pursuant to the terms of this agreement does not constitute substantial assistance to authorities within the meaning of § 5K1.1" or otherwise provide a basis for departure. (Heinrich Aff. ¶ 4). The agreement also disavowed any promise of a plea agreement. The defendant participated in numerous meetings with federal law enforcement agents, as well as AUSA Heinrich, [INFORMATION DELETED].

[INFORMATION DELETED] As it turned out, none of this information could be used by investigators to bring a case.

[INFORMATION DELETED]

[INFORMATION DELETED] AUSA Heinrich sent the defendant's former counsel (Owen Walker, the Federal Public Defender) a proposed plea agreement, under which the defendant would plead guilty to the conspiracy count (carrying a guideline range of 121–151 months) and the government would agree to consider filing a § 5K1.1 motion. The agreement was not accepted. In the cover letter accompanying that agreement, the AUSA indicated that he would seek the defendant's cooperation with a Boston Police Department homicide investigation. A meeting with Boston Police detectives went forward on June 23, 1998; however, the defendant declined to answer questions about the murder at that meeting. Davis [INFORMATION DELETED] apparently became frustrated that the Boston Police were now seeking unrelated information from him. According to counsel, Davis did not believe his cooperation agreement with the government encompassed this [INFORMATION DELETED] activity.

Subsequently, the defendant obtained new counsel, Ms. Pamela Berman. The AUSA and Ms. Berman engaged in plea negotiations and had conversations on the subject over the next year and a half. The defendant's refusal to cooperate in the Boston Police investigation was discussed, but the two attorneys disagree on the import of the Boston Police matter. Specifically, Ms. Berman insists that the AUSA repeatedly offered to recommend the filing of a § 5K1.1 motion, with a recommended sentence of ten years, based upon the substantial assistance already rendered. Defendant did not accept that offer (not surprisingly as the mandatory minimum was 120 months).[3] Furthermore, according to Ms. Berman, AUSA Heinrich indicated he would consider filing a § 3553(e) motion[4] if the defendant cooperated with the Boston detectives and would recommend a five year sentence. This two-tiered approach was not reviewed by Heinrich's supervisors.

In contrast to Ms. Berman's recollection, AUSA Heinrich claims that he considered the defendant's refusal to participate in the Boston investigation to be a "major obstacle to a successful plea agreement because in almost every case, a defendant who enters into a cooperation agreement with our Office must agree to provide complete and truthful information to all enforcement personnel." (Heinrich Aff. ¶ 7). (Ms. Berman disputes that Heinrich told her that the failure to cooperate in the homicide investigation would be an impediment). He admits, however, that at one

---

**3.** Perhaps this offer had more appeal when it was originally made because there was a possibility defendant would be classified as a career offender with a guideline range of 262–327 months. However, to the extent the guideline range began at 121 months, the offer of a downward departure to 120 months was hardly magnanimous.

**4.** This motion, filed pursuant to 18 U.S.C. § 3553(e), allows a court to depart from the otherwise applicable statutory minimum sentence.

point he made the representation Ms. Berman claims—that he would seek approval of a § 5K1.1 motion, with no less than a ten-year sentence recommendation. Furthermore, AUSA Heinrich recalls offering his personal assessment that he believed he could gain the necessary approvals within the USAO from his supervisors and the Committee. He insists, however, that Ms. Berman understood that any final agreement would have required formal approval of the Committee. He also emphasizes that the defendant's refusal to cooperate in the Boston investigation made this case a harder sell to the Committee.

At this stage, the agreement was not reduced to writing. Ms. Berman indicated to AUSA Heinrich that she intended to pursue a motion to suppress the drug evidence. That motion was filed, and denied in January of 2000. Following that decision, plea negotiations resumed, and AUSA Heinrich proposed a standard plea agreement which provided that the government would consider filing a substantial assistance motion. The parties disputed what the length of the recommended sentence would be. Although Ms. Berman insists that she did not reject the government's offer, she agrees that she did not accept it either. There was no dispute over whether the defendant had already rendered substantial assistance sufficient to justify a § 5K1.1 downward departure.

At this point, Ms. Berman indicated that she would be filing a motion to dismiss under the Speedy Trial Act. Ms. Berman claims that even after she told AUSA Heinrich she would be filing that motion, discussions continued regarding what sentence the government would be willing to recommend in the context of filing a § 5K1.1 motion. Again, no agreement was consummated. While the Speedy Trial Act motion was under consideration, the government presented the instant case to the grand jury, which returned an indictment on February 24, 2000. AUSA Heinrich told Ms. Berman that this "new" "holding" indictment was temporary, and that the status of the case would depend on the outcome of the motion to dismiss.

If Judge O'Toole dismissed without prejudice, the government intended to present the original charges to a new grand jury. If the dismissal was with prejudice, AUSA Heinrich intended to pursue additional charges stemming from other alleged drug activity.

On March 27, 2000, Judge O'Toole entered an order dismissing the original indictment, with prejudice, under the Speedy Trial Act. The government filed an appeal of that decision and reviewed evidence concerning additional charges that might be presented to the grand jury. Following the dismissal, counsel for both sides engaged in plea discussions concerning the second indictment. AUSA Heinrich told Ms. Berman that he would no longer consider filing a § 5K1.1 motion. The parties entered into a written plea agreement; under that agreement, in exchange for the defendant's guilty plea to the current charge, the government agreed to forego its appeal of the STA dismissal and would not pursue additional charges. Since the parties disagreed over whether the government was obligated to file, or to consider filing a § 5K1.1 motion, the agreement expressly reserved the defendant's right to raise the issue. The defendant moved to compel the government to file the § 5K1.1 motion on May 31, 2000, which the government opposed.

Concluding that the defendant had made a substantial threshold showing that the AUSA had acted with an impermissible motive, the Court scheduled a hearing. After discussion with counsel, the Court ordered the AUSA to file an affidavit explaining his version of events. If necessary to resolve fact disputes, the Court stated it would hold an evidentiary hearing. However, after review of the affidavits, the Court concluded that the record sufficed for resolution of the issue. Counsel did not object.

At the request of the Court, AUSA Heinrich agreed to submit the § 5K1.1 motion to the Committee. When submitting the matter to the Committee, as

promised, the AUSA did not inform the Committee about the dispute over the STA. The AUSA submitted in writing his description of the substantial assistance and the defendant's description. He proffered to the Court that he did not communicate orally with the Committee in any way to influence its evaluation of the quality of the cooperation. The Substantial Assistance Committee decided not to approve the filing of a § 5K1.1 motion. Its stated reason was defendant's refusal to cooperate in the homicide investigation. At the sentencing hearing, this Court denied defendant's motion to compel and motion to depart downwardly pursuant to U.S.S.G. § 5K2.0. Defendant's sentencing guideline range began at 121 months. He was sentenced to the statutory maximum of 48 months.

Against this thorny factual and procedural background, a difficult set of legal questions emerges.

### DISCUSSION

■ Ordinarily, the government enjoys unbridled discretion in deciding whether or not to file a § 5K1.1 motion. *See United States v. Sandoval*, 204 F.3d 283, 285 (1st Cir.2000) (citing *Wade v. United States*, 504 U.S. 181, 185, 112 S.Ct. 1840, 118 L.Ed.2d 524 (1992)). In two situations, the law constrains that discretion. The first is where "the government's failure to move for a substantial assistance departure is based on some constitutionally impermissible factor," or is "not rationally related to [some] legitimate Government end." *Id.*, 204 F.3d at 286 (citing *Wade*, 504 U.S. at 185–86, 112 S.Ct. 1840). "The second involves cases in which the government explicitly undertakes to make, or to consider making, such a motion." *Id.* at 286. The First Circuit has left "open the possibility that an extrinsic promise or assurance that survives both the execution of the plea agreement and the taking of the defendant's plea may suffice" to restrict the government's judgment in choosing to file a § 5K1.1 motion. *Id.* at 286 n. 1; *see also Santobello v. New York*, 404 U.S. 257, 262, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971) (holding that "when a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, [the] promise must be fulfilled.")

■ If the government's change of position on the § 5K1.1 issue was made in response to the defendant's successful assertion of his rights under the Speedy Trial Act, then the government has withheld the § 5K1.1 motion for an impermissible reason. *See United States v. Goodwin*, 457 U.S. 368, 372, 102 S.Ct. 2485, 73 L.Ed.2d 74 (1982) ("[W]hile an individual certainly may be penalized for violating the law, he just as certainly may not be punished for exercising a protected statutory or constitutional right."); *Bordenkircher v. Hayes*, 434 U.S. 357, 363, 98 S.Ct. 663, 54 L.Ed.2d 604 (1978) (holding that to "punish a person because he has done what the law plainly allows him to do is a due process violation of the most basic sort.").

■ "The government's burden of showing good faith is only a burden of production, not of persuasion." *United States v. Alegria*, 192 F.3d 179, 187 (1999). A defendant is entitled to an evidentiary hearing to determine whether the government acted improperly only if he is able to make a substantial threshold showing that the government acted irrationally, in bad faith, or in violation of one's constitutional rights. *See Wade*, 504 U.S. at 186, 112 S.Ct. 1840.

On the facts of this case, I found that the defendant made a substantial threshold showing that the government acted with an impermissible retaliatory motive. AUSA Heinrich acknowledged that while the Speedy Trial Act motion was pending, the government was still willing to seek a § 5K1.1 downward departure in exchange for the defendant's guilty plea, although the parties had not agreed to the length of a recommended sentence. AUSA Heinrich also acknowledged that he represented to Ms. Berman that he could likely gain

the necessary approval within the USAO, including that of the Substantial Assistance Committee. The offer to consider a § 5K1.1 motion only disappeared after the first indictment was dismissed with prejudice. AUSA Heinrich protested that the drastic turn of the tides in the case resulted in the defendant facing a far reduced sentence under the holding indictment with a statutory maximum of 48 months, and that in this sense, the defendant had been sufficiently "rewarded." Specifically, he stated:

> The reason the government will not [file a § 5K1.1 motion] now is that the defendant has been sufficiently rewarded by the present plea agreement; a sentence lower than 48 months is not sufficient punishment in this case; and the defendant has refused to answer any all [sic] questions by law enforcement officials.

(Government's Resp. to Def.'s Mot. to Compel at 11). The AUSA vigorously denied an intention to punish defendant for filing a motion to dismiss by stating, "Indeed, far from punishing the defendant, he has been greatly rewarded, reducing his minimum guideline range from 121 to 48 months." *Id.* at 12. Heinrich further stated, "I was willing to consider the possibility of a 5K1.1 motion only because I believed that the guideline range to which [Davis] was exposed was so high (121—151 months) that a slight departure would not compromise my objectives." (Heinrich Aff. ¶ 17).

■ I do not find that Mr. Heinrich was "vindictive" in the mean-spirited sense of the word. He was not trying to punish Davis for the audacity of pressing—and winning—a STA motion. Nonetheless, Mr. Heinrich's focus is misplaced, and the grounds upon which he now insists no § 5K1.1 motion will even be considered are not rationally related to a legitimate government end. It is true that the defendant faced a far lower sentence if convicted on the sole charge in the second indictment. However, manipulating the length of a defendant's sentence is an improper consideration when deciding whether to file a downward departure motion. *See*

*United States v. Rounsavall*, 128 F.3d 665, 669 (8th Cir.1997) (holding that the government cannot base a decision to file a § 3553(e) motion on factors other than the substantial assistance provided by the defendant); *United States v. Stockdall*, 45 F.3d 1257, 1261 (8th Cir.1995) ("The desire to dictate the length of a defendant's sentence for reasons other than his or her substantial assistance is not a permissible basis for exercising the government's power under § 3553(e)."); *United States v. Khoury*, 62 F.3d 1138, 1140 (9th Cir.1995) (holding that government cannot withhold a § 5K1.1 motion to penalize the defendant for exercising his right to a trial after the government had already filed a motion and the guilty plea was vacated). Courts have condemned government decisions to limit downward departure motions which are substantially motivated by an effort "to reduce the district court's discretion to depart from the government's notion of the appropriate total sentences." *Stockdall*, 45 F.3d at 1261.

■ The sentencing guidelines, and accompanying comments, delineate the factors which are to guide the Court in its assessment of a defendant's substantial assistance. *See* U.S.S.G. § 5K1.1(a)(1)-(5) (1998). Those factors look to the quality of the assistance provided by a defendant; they make no mention of the length of the sentence a defendant is facing. While these factors are intended to guide the Court's exercise of discretion, they are instructive for the prosecution as well. It is in assessing the quality of the defendant's assistance—not the appropriate length of the sentence—that the government is given nearly unlimited discretion. *See United States v. LaGuardia*, 902 F.2d 1010, 1015 (1st Cir.1990) (reasoning that the government motion requirement behind § 3553(e) and § 5K1.1 reflects the fact that "the government is in the best position to supply the court with an accurate report of the extent and effectiveness of the defendant's assistance"); *United States v. Doe*, 934 F.2d 353, 358 (D.C.Cir.

1991) (calling the government motion requirement a "practical device that allows the government to give appropriate weight to its investigative and enforcement activities" while relieving courts of the burden of reviewing each defendant's claim of substantial assistance).

■ Here, there is no meaningful dispute between the parties that the defendant offered substantial assistance to the government in its drug investigation, although he did not cooperate with the Boston homicide investigation.[5] While Mr. Heinrich insists that the defendant's recalcitrance would have undercut the likelihood that the Substantial Assistance Committee would have gone along with Mr. Heinrich's recommendation, he nonetheless agreed to submit the defendant's circumstances to the Committee for its consideration. The intervening Speedy Trial Act dismissal may have changed the sentencing consequences, but could not have affected a change in the quality of the substantial assistance the defendant had already rendered. Under the circumstances, the defendant has proven that the AUSA refused to follow through on its previous offer to recommend a § 5K1.1 downward departure because of the Speedy Trial Act dismissal and the "reward" it triggered, not because of the quality of the substantial assistance.

■ The courts have the authority to review a prosecutor's refusal to file a substantial assistance motion and to grant a remedy if they find that the refusal was based on an impermissible motive. *See Wade,* 504 U.S. at 185–86, 112 S.Ct. 1840. At the hearing, AUSA Heinrich—perhaps

sensing the inevitable—agreed to submit the defendant's case to the Substantial Assistance Committee in the USAO, which obviated the need for a court order.

Defendant argued that this Court should have ordered the government to file a § 5K1.1 motion and that submission to the Substantial Assistance Committee would not remedy the harm. There are three flaws in this argument.

First, the AUSA made only a contingent promise to file a § 5K1.1 motion if it was approved by the Substantial Assistance Committee.[6] The U.S. Attorneys' Manual explicitly limits "[a]uthority to approve [the filing of a § 5K1.1 motion] to the United States Attorney, the Chief Assistant United States Attorney, and the supervisory criminal Assistant United States Attorneys, or a committee including at least one of these individuals." 3 The Department of Justice Manual, U.S. Attorneys' Manual § 9–27.400 (2d ed.2000). Nothing in the promise, even under the defendant's version, suggested that if Davis volunteered all the information that he had in connection with the drug investigation, or all that was asked for, the government would be bound to file the motion. Accordingly, if I granted defendant's requested relief, he would be getting more than he was promised. *See United States v. Jones,* 58 F.3d 688, 691 (D.C.Cir.1995) (holding that language in a plea agreement which promised that the office would file a § 5K1.1 and § 3553(e) agreement only if the Departure Guideline Committee approved created only a contingent obligation).

5. At the last sentencing hearing, defense counsel pressed the point that defendant did try to cooperate with the homicide investigation, but he had no information about the murder. This had never been raised before except in a terse footnote in a reply memorandum. AUSA Heinrich vigorously disputed this assertion and stated that defendant refused to meet with police about suspects and other persons who might have knowledge, like certain of defendant's family members. The Court has no basis in the record to conclude that the government's assessment of

defendant's recalcitrance is irrational or in bad faith. The prosecutor has taken a consistent position on this issue, even before the grant of the STA.

6. About one quarter of the districts report that the U.S. Attorney's Office uses a substantial assistance review committee. *See* Linda Drazga Maxfield & John H. Kramer, *Two Sentencing Commission Staff Reports on Substantial Assistance,* 11 Fed. Sentencing Rep. 6, 16 n. 18 (1998).

Second, there is no allegation or evidence that the Committee acted in bad faith, or that the proffered reason for its refusal to approve the filing of a § 5K1.1 motion is facially inadequate. *See Alegria*, 192 F.3d at 188 (recognizing an obligation on the part of the government to evaluate a criminal defendant's assistance in good faith and approving a facially adequate reason for the government's failure to find that the defendant had rendered substantial assistance). No evidentiary hearing with respect to the Committee's motivation was asked or called for. *See id.* at 188 (stating that a criminal defendant is not entitled as of right to an evidentiary hearing on a pretrial motion, but must carry a fairly heavy burden of demonstrating a need for special treatment).

■ Third, there is no evidence defendant detrimentally relied on the prosecutor's promise. A defendant seeking to enforce a promise made in the context of plea agreement negotiations "must show that the promisor had actual authority to make the particular promise and that he (the defendant) detrimentally relied on it." *United States v. Stephen J. Flemmi*, 225 F.3d 78, 79 (1st Cir.2000). By the time Mr. Davis entered a plea of guilty pursuant to an agreement, the prosecution had renunciated any promise to consider filing a § 5K1.1 motion.

Defendant protests that he fully cooperated in the federal arena and deserves to have a substantial assistance motion filed for his benefit even if he refused to give a proffer in an unrelated state homicide investigation. While this frustration is understandable, this argument raises the precise concern emphatically stated by the First Circuit: "Defendants, asked for information to incriminate others, have good reasons to fear for their safety and, unless the prosecutor holds the whip hand, the defendant may offer up some information and hold back the more vital balance in the hope that the court will find the government 'unreasonable' and infer 'bad faith.'"

*Id.* at 188 (citing *United States v. Doe*, 170 F.3d 223, 225 (1st Cir.1999)).

My one lingering concern is that the AUSA promised defendant he would seek consideration of the § 5K1.1 motion and optimistically told defense counsel that he expected to gain approval. Yet his begrudging submission of the § 5K1.1 motion to the Committee was prompted by the court. Often the best advocate for a defendant in the courtroom is the prosecutor who is happy with a successful informant. Davis did not have an enthusiastic advocate before the Committee. Nonetheless, there is no evidence the AUSA poisoned the well or tainted the Committee's decision-making with impermissible considerations. If the Substantial Assistance Committee had approved the motion prior to the grant of the STA motion, and then reneged, an inference of improper motive may well have been reasonable. The record here does not support that inference.

■ Finally, defendant urges me to depart downwardly under § 5K2.0. However, § 5K1.1 occupies the field of departures for substantial assistance, and "however labeled, [they] are available only under section 5K1.1." *Alegria*, 192 F.3d at 189. I do not have the discretion to depart downwardly for substantial assistance under U.S.S.G. § 5K.2.0.

### ORDER

Defendant's Motion to Compel the Government to File a Motion for Reduction of Sentence Pursuant to U.S.S.G. § 5K1.1. (Docket 19) is **DENIED**. Defendant's Motion for a Downward Departure Pursuant to U.S.S.G. § 5K2.0 is also **DENIED**.