**UNITED STATES of America,
Appellee,**

v.

**John DOE, Defendant, Appellant.**

No. 99–1501.

United States Court of Appeals,
First Circuit.

Argued Sept. 12, 2000.

Decided Nov. 28, 2000.

Maria H. Sandoval for appellant.

Nelson Perez–Sosa, Assistant United States Attorney, with whom Guillermo Gil, United States Attorney, and Jorge E. Vega–Pacheco, Assistant United States Attorney, were on brief for appellee.

Before SELYA, Circuit Judge, COFFIN, Senior Circuit Judge, and STAHL, Circuit Judge.

COFFIN, Senior Circuit Judge.

Appellant John Doe (a pseudonym) claims the government breached his plea agreement by failing to recommend a lower sentence in return for his disclosure of a considerable amount of useful information about other individuals' drug dealing. After extensive hearings, the district court concluded that Doe was not entitled to sentencing relief because he had not provided "substantial assistance" to the government, as required by the plea agreement and U.S.S.G. § 5K1.1. Doe argues on appeal that the district court erred, *inter alia*, in undervaluing his cooperation and in refusing to consider evidence of gender-based animus against his attorney. Our careful review of the transcripts and other record materials revealed no flaw in the court's judgment. We therefore affirm.

I. *Background*

We have recounted the facts underlying this case in a previous opinion, *see United States v. Doe,* 170 F.3d 223, 224 (1st Cir. 1999), and therefore re-set the stage only briefly here. Appellant, who earlier in 1995 had been convicted on cocaine distribution charges and sentenced to the statutory minimum term of ten years imprisonment, was indicted again in June of that year for another drug offense. He decided to cooperate with prosecutors in exchange for sentencing benefits, including a government motion for downward departure under Guidelines § 5K1.1 that offered the possibility of combining the punishment for the two cases into a single, reduced term.[1] Ultimately, the government recommended that the sentences be served concurrently, but it declined to seek a downward departure.

Doe sought specific performance from the two different judges handling the cases. The judge in the earlier case denied relief, and we affirmed his ruling in the decision noted above. The judge in the later case held five days of hearings on appellant's claims of breach, but reached the same conclusion: appellant did not provide substantial assistance to the government and thus was not entitled to specific performance of the plea agreement. That is the decision now on appeal before us.

■ The district court's resolution of factual questions concerning either the terms of the plea agreement or the government's conduct is reviewed only for

---

1. U.S.S.G. § 5K1.1 empowers the sentencing court to depart from the guidelines when the government has filed a motion "stating that the defendant has provided substantial assis-

tance in the investigation or prosecution of another person who has committed an offense."

clear error, but whether that conduct constituted a breach of the plea agreement is a question of law subject to plenary review. *United States v. Clark,* 55 F.3d 9, 11 (1st Cir.1995).

## II. *Discussion*

■■■ What appellant seeks to accomplish in this appeal—to compel the government to recommend a sentence below the standard guideline range—has by design been made difficult to achieve. As we have observed, the government has almost "unbridled discretion" in deciding whether to file a motion for departure under § 5K1.1. *See United States v. Sandoval,* 204 F.3d 283, 285 (1st Cir.2000) (citing *Wade v. United States,* 504 U.S. 181, 185, 112 S.Ct. 1840, 118 L.Ed.2d 524 (1992)). Even a defendant who enters into a plea agreement that trades useful cooperation for the possibility of a downward departure will face an uphill climb in challenging the government's discretionary decision not to file such a motion. To prevail, a defendant must show bad faith, requiring proof of either an unconstitutional motive or arbitrariness, *see Wade,* 504 U.S. at 185–86, 112 S.Ct. 1840; *United States v. Alegria,* 192 F.3d 179, 187 (1st Cir.1999),[2] or a contract-like breach of explicit lan-

guage, *see Santobello v. New York,* 404 U.S. 257, 262, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971). *See also Sandoval,* 204 F.3d at 284, 286. In responding to an allegation of bad faith, the government bears only a burden of production, *see Alegria,* 192 F.3d at 187, and to merit discovery or an evidentiary hearing on claims that a prosecutor unlawfully refused to file a substantial-assistance motion, a defendant must make a "substantial threshold showing." *Wade,* 504 U.S. at 186, 112 S.Ct. 1840; *Alegria,* 192 F.3d at 187.

■■■ Whatever the basis for a defendant's challenge to a prosecutor's inaction, a necessary condition of relief under § 5K1.1 is that the defendant actually provided substantial assistance to the government. *Doe,* 170 F.3d at 226. In this case, the district court allowed an evidentiary hearing before concluding that appellant had not met that prerequisite. The judge meticulously reviewed and assessed each item of information that Doe provided and the government's reasons for discounting its value. We have carefully examined the court's conclusions and agree with its judgment. Rather than set out here again the person-by-person and fact-by-fact description of the evidence already fully chroni-

2. In *Wade,* the Supreme Court held that the government's refusal to file a § 5K1.1 motion on behalf of a defendant who did not have a plea agreement was remediable only if the government had acted based on an unconstitutional motive or if the refusal was "not rationally related to any legitimate Government end." 504 U.S. at 185–86, 112 S.Ct. 1840. In *Alegria,* 192 F.3d at 187, we stated that the good faith standard we had articulated in *United States v. Garcia,* 698 F.2d 31, 35 (1st Cir.1983), remained good law after *Wade.* We had ruled in *Garcia* that the government's decision against seeking a lenient sentence under a plea agreement giving the government discretion would not be disturbed so long as there was a "good faith consideration" of the defendant's cooperation. To satisfy this obligation, the government merely needed "to set forth in the record sufficient reasons for its belief that [appellant] has not cooperated fully and that ... a recommendation [of leniency] ... is not proper." *Id.; see also Alegria,* 192 F.3d at 187.

The *Garcia* good-faith standard ensures that a defendant with a plea agreement is not arbitrarily deprived of the benefit of his bargain, *see* 55 F.3d at 12 (prosecutors engaged in plea bargaining are held to " 'the most meticulous standards of both promise and performance' ") (quoting *Correale v. United States,* 479 F.2d 944, 947 (1st Cir.1973)), while it also fully protects the government's legitimate exercise of its discretion to deny a § 5K1.1 departure.

We add one further note. Although the language quoted above from might suggest otherwise, "full, complete and truthful cooperation" does not necessarily constitute "substantial assistance" under § 5K1.1., 192 F.3d at 183–84. Other relevant factors include the significance and utility of the information provided, the nature and extent of the defendant's assistance, and the timeliness of the proffer. *Id.* at 184.

cled in the district court opinion, we think it suffices to portray its findings in more summary terms. In short, the district court found that the intelligence contributed by appellant in some instances duplicated information the government had from other sources (notably, William Negron Zapata, known as "Macho Punto Ocho"), often involved small quantities of drugs, identified individuals who already were cooperating and, in some cases, led only to time-barred crimes. Typically, appellant himself was the supplier of the drugs used by the individuals he identified.[3] Our review of both the transcripts from the evidentiary hearing and appellant's written submissions persuades us that the court supportably found that his information did not amount to "substantial" assistance.[4]

Appellant challenges on several fronts the conclusion that he failed to hold up his end of the bargain. First, he emphasizes that the government knew before executing the plea agreement that he already had turned over all of the information he possessed; therefore, implicit in the promise to consider a § 5K1.1 motion in exchange for his information was an acknowledgment that what he had provided was enough to constitute "substantial assistance." He points out, in addition, that the government explicitly agreed in paragraph 5 of the plea agreement that "the

defendant's failure to 'make a case' shall not relieve the government of exercising its discretion" to file a downward departure motion. Thus, he claims, the fact that no prosecutions resulted from his information could not be a factor in evaluating the substantiality of his assistance. Appellant argues that the combination of his full disclosure and paragraph 5 adds up to a broken promise by the government.

As we indicated in our previous opinion, the government's promise not to base its decision on whether appellant's information "made a case," particularly when combined with appellant's full disclosure of what he had to offer before the agreement was signed, may have satisfied the threshold for obtaining an evidentiary hearing on the government's compliance with the agreement. *See Doe*, 170 F.3d at 226. At this point, however, entitlement to a hearing is not the issue.[5] Appellant was given the opportunity to explore at length the usefulness of what he provided. Although the government perhaps could have done more, and sooner, with what appellant revealed, *see infra* at 646, the bottom line is that appellant's information turned out to be of little value to prosecutors. Appellant undoubtedly hoped—indeed, may have expected—that the information viewed as promising by the government would bear

---

3. In urging the court to find that he had given substantial assistance, appellant emphasized the information he provided about six individuals whose drug activity he believed offered the greatest promise for government investigators. Of these, one already had been indicted by the time defendant was interviewed (Ceballos); the activity of a second (Kelly Torres) already had been reported by another cooperating defendant; the information on a third (Tete) involved a transaction for which the statute of limitations ran in March 1996, allowing little time for the government to investigate; and the drugs used by the other three individuals (Lasus, Ayala and Puchy) usually were in small amounts provided by appellant, and some of their transactions also became time-barred within months after appellant began cooperating.

4. Appellant attempts to discredit the government's explanation for its refusal to recommend departure, and thereby to show pretext, by asserting that prosecutors only belatedly claimed that he had lied in his original report of drug activity by one Rafael Pena. We see nothing suspicious in the government's effort, even as a second thought, to bolster its position with a claim of untruthfulness that it initially may not have considered substantial. In any event, doubts about appellant's veracity did not play a role in the district court's analysis of appellant's assistance and it likewise has not factored into our review.

5. Appellant urges us to articulate standards regarding "the quantum and quality of evidence" that constitutes a sufficient proffer to warrant a hearing into the government's compliance with a plea agreement. That issue is not before us in this case, and we therefore decline to engage in the discussion.

sufficient fruit to earn him sentencing relief. But the government's retention of discretion was an unambiguous signal that there still were hurdles to be cleared. The government's obligation to consider filing the motion did not emerge until appellant's information actually became significantly profitable, albeit not necessarily through the making of a case.[6]

Appellant's second contention attempts to deflect the finding that his assistance was inadequate by laying blame on the government. He maintains that prosecutors unfairly deprived him of the ability to play a greater role in their investigations by failing to act quickly on the tips he provided, rendering obsolete certain of his information. Although the government must operate in good faith, we already have concluded that its conduct here was within the risks undertaken by a defendant entering into a plea agreement:

> The present allegations, even if fully accepted, amount to nothing more than the charge that the prosecutors or police were initially encouraged by information that Doe provided, were slothful in exploiting it and ultimately came away with nothing. Basically, this amounts simply to a claim that the government acted carelessly or unreasonably.

*Doe,* 170 F.3d at 225; *see also Alegria,* 192 F.3d at 189. The government may have benefitted more had it pursued appellant's information more aggressively, but that possibility does not permit our interference in the government's discretionary decision against moving for departure. *See Alegria,* 192 F.3d at 189 ("[T]he government's failure to pursue such information, without more, amounts at most to carelessness and does not suffice to make out a case of bad faith.").

6. We reject appellant's contention that the district court's discussion showed that it gave improper weight to his failure to make a case. Although the court did, for example, contrast defendant's information with that of a cooperator who was "responsible for the indictment

In a third attack on the district court's conclusion, appellant argues that the information he provided was no different, quantitatively or qualitatively, from information provided by other defendants for whom the government did request downward departures. We are disinclined to chase after claims of differential treatment in assessing whether a particular defendant provided substantial assistance because the range of factors that may impact the government's discretion is unlikely to be a perfect match from one case to another. Here, for example, appellant highlights Macho Punto Ocho as an equivalent cooperator because, *inter alia,* many of his reports involved time-barred episodes and small quantities of drugs. Yet the record strongly indicates that the volume of information he provided far surpassed that of appellant and led to at least a dozen convictions following indictments against some 50 individuals. Moreover, Macho Punto Ocho's earlier cooperation diminished or eliminated the usefulness of appellant's disclosures about certain individuals known to both of them.

Another cooperating individual put forward as comparable, Wilfredo Ceballos Trabal, began assisting the government as soon as he was arrested, unlike defendant, who waited until after he faced a possible second conviction. Even if Ceballos's more prompt cooperation seemed no more useful than appellant's—and we make no such determination—we could not conclude that the decision to provide leniency to Ceballos obligated the government to give an equivalent benefit to appellant. We certainly do not wish to discourage the government from seeking departure in cases where the assistance may appear less than substantial to the outside observer. Our task is only to ensure that, assuming a specific promise, defendants who

of up to 52 individuals," a reading of the court's opinion in its entirety demonstrates that it found appellant's tips inadequate to constitute substantial assistance at any stage of the government's investigations.

satisfy the prerequisite are not unfairly deprived of the reward. For the reasons we have explained, the defendant here did not establish entitlement to the relief.[7]

■ Finally, appellant argues that the government's decision was infected by gender bias and that the district court improperly failed to factor the government's motivation into its analysis. In his view, he provided the government with ample information to investigate a substantial amount of illegal drug activity. Appellant asserts that, but for the improper animus against his attorney, who is female, the government not only would have acted more expeditiously to investigate the information he provided but also would have assessed what he did provide more favorably.

Although the district court found that appellant had made a colorable claim of animus,[8] it found it unnecessary to address the claim because appellant had not met the "substantial assistance" threshold. Appellant urges us to remand the case and direct the district court to reconsider his assistance in light of the government's unconstitutional motivation. He maintains that, if the government's intentionally obstructionist approach to his case is factored in, the outcome would be different.

The record belies the contention that gender bias played a significant role in appellant's fate. He attributes the discriminatory animus only to Assistant U.S. Attorney Quiles. Quiles, however, did not take over appellant's case until the summer of 1996, nearly a year after appellant first gave the government information about others' drug activities and at least half a year after he entered into the plea and cooperation agreement. A number of the transactions reported by appellant became time-barred in the spring of 1996; the crucial inaction therefore occurred earlier. The record evidence is that the AUSA who previously handled the case, Muldrow, was extremely busy and did not move appellant's case along simply because he did not get to it. Indeed, defense counsel acknowledged at the hearing that the likely reason for the government's failure to act during that time period was that the case agent and prosecutor were "too busy" and "overloaded." By the time Quiles acquired the case, the potential value of appellant's information already had deteriorated.

Thus, even if AUSA Quiles did harbor gender bias—and we do not suggest that he did—we find no basis on this record for concluding that it played a material part in limiting the assistance that appellant was able to provide. The government may have been responsible for diminishing the usefulness of his information by failing to act quickly, but, as we have explained, this does not affect the integrity of the decision against awarding a downward departure. *See supra* at 646. The government's assessment, endorsed by the district court, that the information he was able to supply fell short of "substantial assistance" is, under the facts of this case, unassailable. Like the district court, we conclude that his failure to meet that standard makes it unnecessary to consider any further the possibility of unconstitutional animus.[9]

---

7. This case illustrates why we think that comparing different defendants' assistance ordinarily would shed little, if any, light on the government's compliance with a plea agreement promising discretionary sentencing relief. We do not, however, reject the possibility that such an analysis could be useful in an appropriate case.

8. Appellant relied on several episodes linked to his attorney's successful defense of another defendant in a 1995 case prosecuted by Assistant U.S. Attorney Quiles. Among other things, in a telephone conversation with defense counsel, Quiles referred to that case and allegedly called her "an intelligent bitch." Appellant attributes Quiles' animus both to his attorney's gender and to the prosecutor's having lost the case, and perhaps in particular because the loss was to a woman.

9. We recognize that appellant at least implicitly seeks to bypass the conclusion that he did not provide substantial assistance by contending that, notwithstanding the reduced value of his information by the time Quiles took over his case, the government would have moved for departure but for the prosecutor's animus.

*For the foregoing reasons, the judgment of the district court is affirmed.*

In the face of the government's wide discretion to withhold a departure motion, however, it would be exceedingly difficult to prove that a refusal to move stemmed from unconstitutional bias rather than an honest evaluation of the assistance provided. We can presently imagine only two circumstances in which such a claim could succeed: (1) if the defendant's evidence of assistance was so overwhelming that no reasonable prosecutor could characterize it as less than substantial, thereby creating an inference of bias; and (2) if the defendant produced direct or similarly compelling evidence of bias, i.e., the highly unlikely "smoking gun." Neither circumstance exists here.