**UNITED STATES of America,**
**Appellee,**

v.

**Arnold REEVES, Defendant–Appellant.**

**Docket No. 00–1295.**

United States Court of Appeals,
Second Circuit.

Argued: Oct. 24, 2001.

Decided: July 17, 2002.

I. Bennett Capers, Esq., United States Attorney's Office, Southern District of New York, for Appellee.

David E. Liebman, Esq., Law Office of David E. Liebman, Esq. New York, NY, for Defendant–Appellant.

VAN GRAAFEILAND, WINTER and SACK, Circuit Judges.

VAN GRAAFEILAND, Senior Circuit Judge.

Arnold Reeves appeals from a judgment of conviction filed April 17, 2000 and from the denial by District Judge Loretta A. Preska of his motion to order the United States to move pursuant to Section 5K1.1 of the United States Sentencing Guidelines and 18 U.S.C. § 3553(e) for downward departure based on what Reeves claims was substantial assistance to the government. Because Reeves has failed to demonstrate that the government acted wrongfully or in bad faith, we affirm.

## BACKGROUND

On May 2, 1996, the United States filed a two-count information against Reeves. Count One charged Reeves with conspiracy to distribute and to possess with the intent to distribute phencyclidine (PCP) over a ten-year period, in violation of 21 U.S.C. §§ 812, 814(a)(1), and 841(b)(1)(A). Count Two charged that Reeves owned and controlled certain real and personal property of a value in excess of $1.4 million as a result of the wrongdoing alleged in Count One, in violation of 21 U.S.C. §§ 853(a)(1) and 853(p).

On May 8, 1996, pursuant to a written Plea/Cooperation agreement (the Agreement), Reeves pleaded guilty to Count One of the information, and he agreed to forfeit the property described in Count Two. The Agreement required Reeves to satisfy certain cooperation requirements, including the complete, truthful disclosure of all information requested by the government, attendance at meetings as required, disclosure of certain tangible evidence, truthful grand jury and trial testimony, and discontinuance of all criminal behavior.

In connection therewith, the Agreement provided that:

> if [the United States Attorney's] Office determines that the defendant has provided substantial assistance in an investigation or prosecution, and if he has fully complied with the understandings specified in this Agreement, [the United States Attorney's] Office will file a motion, pursuant to Section 5K1.1 of the Sentencing Guidelines and 18 U.S.C. § 3553(e) requesting the Court to sentence the defendant in light of the factors set forth in Section 5K1.1(a)(1)-(5).

> \* \* \* \* \* \*

> It is understood that, should [the United States Attorney's] Office determine either that the defendant has not provided substantial assistance in an investigation or prosecution, or that the defendant has violated any provision of this Agreement, such a determination will release [the United States Attorney's] Office from any obligation to file a motion pur-

suant to Section 5K1.1 of the Sentencing Guidelines and 18 U.S.C. § 3553(e), but will not entitle the defendant to withdraw his guilty plea once it has been entered.

Reeves was released on bail, and for the next year or so, he cooperated with the government. In an attempt to meet the Agreement's substantial assistance requirement, Reeves provided information concerning transportation and distribution of PCP between and in California and New York. Reeves made telephone calls monitored by the government to Frank Williams, another target of the government's investigation, and to others similarly involved. Apparently because Williams and the others were aware that Reeves had been arrested, they did not incriminate themselves in those calls, and at least some of the calls went unanswered. Generally, Reeves was unable to elicit incriminating evidence as a result of the calls. Plans to have a federal investigator meet Reeves to obtain Reeves's assistance fell through when, as the result of an independent investigation, Williams was indicted in Louisiana.

Reeves claims that he did inform the United States of the location of several possible illegal drug activities. The government claims that this information was insufficiently specific to be of any use. Reeves disagrees, pointing out that he supplied the alias of an alleged dealer and the names of three of the dealer's associates, the address and apartment number where several of the activities took place, a map of that apartment, and a description of at least one of the occupants of the apartment. Reeves also asserts that although the government claimed that the information was "stale" and that thus it did not act thereon, the New York Police Department was able to and did arrest people at the address on a narcotics warrant just a few months later.

On April 18, 1997, the United States moved for revocation of Reeves's bail. The government gave two reasons for its motion: (1) that Reeves had breached the terms of the Agreement, specifically, by failing to maintain contact with the government as required; and (2) that Reeves had failed to provide substantial assistance to the government. With respect to the first reason, the government claimed that Reeves once failed to appear at the Drug Enforcement Administration office when he was directed to do so by his controlling agent. Based on that failure, the district court issued a warrant for Reeves's arrest, and Reeves was arrested shortly thereafter. Reeves contends that his failure to appear was caused by a defect in his pager and a misunderstanding concerning dates.

Claiming that he had fulfilled all of the Agreement's requirements, Reeves moved on October 17, 1997 to compel the United States to submit a § 5K1.1 letter and a § 3553(e) motion for downward departure. The district court held extensive hearings on the motion, and by order dated August 6, 1999, denied Reeves's motion in its entirety. *United States v. Reeves*, No. 96–CR–325, 1999 WL 595639, 1999 U.S. Dist. LEXIS 12162 (S.D.N.Y. Aug.6, 1999). Thereafter, pursuant to 21 U.S.C. § 841(b)(1)(A), the district court sentenced Reeves to the statutory minimum of twenty years incarceration, ten years supervised release, and a fifty-dollar special assessment.

### DISCUSSION

We review the district court's interpretation of the Agreement *de novo*. *See United States v. Rexach*, 896 F.2d 710, 713 (2d Cir.) ("Cooperation agreements, like plea bargains, are interpreted according to principles of contract law.... Whether the

district court applied correct principles is a matter of law that we may review *de novo.*"), *cert. denied,* 498 U.S. 969, 111 S.Ct. 433, 112 L.Ed.2d 417 (1990). We examine the district court's findings of fact for clear error. *United States v. Fernandez,* 127 F.3d 277, 283 (2d Cir.1997); *United States v. Hernandez–Santiago,* 92 F.3d 97, 100 (2d Cir.1996); 18 U.S.C. § 3742(e).

■ Where, as here, a plea agreement provides that the government will file a § 5K1.1 letter if it determines that the defendant has provided substantial assistance, the court may review the agreement in good faith to see if the government has lived up to its end of the bargain. *United States v. Leonard,* 50 F.3d 1152, 1157 (2d Cir.1995). To meet its obligation of good faith, the government need only demonstrate honest dissatisfaction with the defendant's efforts. *See also United States v. Rexach,* 896 F.2d at 713:

> In a contract, where the agreement is conditioned on satisfaction of the obligor, the condition is not met "if the obligor is honestly, even though unreasonably, dissatisfied." Thus, where the explicit terms of a cooperation agreement leave the acceptance of the defendant's performance to the judgment of the prosecutor, the prosecutor may reject the defendant's performance provided he or she is honestly dissatisfied.

■ Reeves asserts that the government was under a burden to allocate whatever resources were necessary to follow up on his tips, and that sloppy or incompetent follow-up can constitute bad faith. In

*United States v. Doe,* 170 F.3d 223 (1st Cir.1999), the First Circuit, operating from the principle that the central question was the good faith of the prosecution, held that all allegations that the police "were slothful in exploiting" information provided by the defendant do not indicate bad faith but "amount[ ] simply to a claim that the government acted carelessly or unreasonably." *Id.* at 225; *accord United States v. Doe,* 233 F.3d 642, 646 (1st Cir.2000); *United States v. Alegria,* 192 F.3d 179, 189 (1st Cir.1999). By contrast, the Fifth Circuit remanded a case for further evidentiary hearings, in part, because the "district court failed to address [the defendant's] claim that government investigators failed to both follow up on information he provided and fully debrief him." *United States v. Wilder,* 15 F.3d 1292, 1296 (5th Cir. 1994). The court then held that "when a defendant, in reliance on a [promise by the government], accepted the government's plea offer and did his part, or stood ready to perform but was unable to do so because the government had no further need or opted not to use him, the government is obliged to move for a downward departure." *Id.* at 1296–97 (quoting *United States v. Melton,* 930 F.2d 1096, 1098–99 (5th Cir.1991) (alteration in original)).[1] Whatever the proper solution of this tension between the circuits on this issue, we find no fault in the district court's conclusion that, in the case before us on appeal, the government was not guilty of bad faith. The government met with Reeves on many occasions for over a year in an attempt to

---

**1.** After argument, Reeves called our attention to *United States v. Harris,* 188 F.Supp.2d 294 (W.D.N.Y.2001). We think the situation in *Harris* is distinguishable from that before us. The *Harris* court concluded that a § 5K1.1 letter was mandatory because the United States Attorney's office had "affirmatively and actively thwarted [the defendant's] efforts to fulfill his obligations under the [plea a]gree-

ment." To act in such a manner, the district court concluded, "constitutes bad faith and under such circumstances the Government should be compelled to live up to its obligations under the [a]greement." *Id.* at 306. The sort of government behavior with which the *Harris* court had to deal is a far cry from the allegedly sloppy, incomplete, and incompetent follow-up alleged by Reeves here.

explore ways in which he might provide assistance. These efforts did not substantially further an investigation, the district court found after conducting an extensive evidentiary hearing, because of Reeves's "failure of initiative after his initial attempts had been rebuffed by individuals who were aware of his arrest, distraction by other pursuits such as school and looking at real estate and, finally, Reeves' not really comprehending that the day of sentencing would eventually arrive." *Reeves*, 1999 WL 595639, at *3, 1999 U.S. Dist. LEXIS 12162, at *9. Despite Reeves's failure to provide substantial assistance, the government—in recognition of the defendant's cooperation—offered to withdraw the prior felony information it had filed, which would have allowed the defendant to seek a downward departure to 120 months' imprisonment. Given the government's substantial time commitment to this case, its generous offer to withdraw the prior felony information, and Reeves's "failure of initiative," the district court did not err in concluding that the government did not act in bad faith simply because it failed to follow up one lead that it viewed as stale and insufficiently detailed.

■ Reeves also points to the government's allegedly egregious conduct during his bail revocation as further evidence of the government's bad faith. In her order, Judge Preska accepted "that the government ha[d] hardly covered itself in glory in this matter; its representation to the Court that Reeves failed to maintain contact with his controlling agents was either inexcusably careless or an outright falsehood." *Reeves*, 1999 WL 595639, at *4, 1999 U.S. Dist. LEXIS 12162, at *12. Nonetheless, after acknowledging that "it is not unheard of in this District for the government to elect to file a § 5K1.1 motion on the basis of information similar to Mr. Reeves', albeit perhaps more vigorous-ly followed up," *id.* (footnote omitted), Judge Preska found that such conduct by the government "b[ore] little relevance to the core issue of whether or not the government's refusal to file a § 5K1.1 motion is or is not in bad faith," *id.* Reeves has offered insufficient reason for us to disagree.

To be sure, throughout its opinion, the district court repeatedly questions the veracity of the government. Thus, with respect to the bail revocation, it describes the government's representation that Reeves "failed to maintain contact with his controlling agents [ ]as either inexcusably careless or an outright falsehood." *Reeves*, 1999 WL 595639, at *4, 1999 U.S. Dist. LEXIS 12162, at *12. Yet, even after taking this behavior into account, the court explicitly credited the government's testimony that none of the information provided by Reeves advanced any prosecutions. *Id.* We must defer to this credibility determination by the district court with respect to what is, indeed, "the core issue." *See id.*

## CONCLUSION

It is undisputed that the information Reeves provided did not lead to anything satisfactory to the United States. The standard is "honest, even if unreasonable, dissatisfaction" of the government, and the district court's factual finding that the government's dissatisfaction with Reeves's assistance was honest is not clearly erroneous. Reeves has failed to meet his burden of showing prosecutorial bad faith. We have considered the defendant's other contentions and find them to be without merit. Accordingly, the district court properly denied Reeves's motion to compel.

Affirmed.