**UNITED STATES of America,**
**Appellee,**

v.

**Jane ROE, John Doe,\* Defendants–**
**Appellants.**

**Docket Nos. 04–5677–CR(L),**
**04–5932–CR(CON).**

United States Court of Appeals,
Second Circuit.

Submitted: Nov. 30, 2005.

Decided: March 27, 2006.

As amended: April 11, 2006.

---

\* Although "Jane Roe" is listed as a defendant-appellant in the official caption of this case, she does not appear to have perfected her appeal. "John Doe" is referred to herein as "the defendant."

Michael Jude Jannuzzi, Huntington, NY, for Defendant–Appellant.

Roslynn R. Mauskopf, United States Attorney for the Eastern District of New York (Burton T. Ryan, Emily Berger, Assistant United States Attorneys for the Eastern District of New York, of counsel), Brooklyn, NY, for Appellee.

Before: CARDAMONE and SACK, Circuit Judges, and CASEY, District Judge.**

SACK, Circuit Judge.

In October 2002, after engaging in nine proffer sessions with the government over an eight-month period of time, the defendant-appellant entered into a cooperation agreement with the government. He agreed to plead guilty to: (1) conspiracy to distribute cocaine; (2) use of a firearm in relation to a drug trafficking crime; (3) arson; and (4) conspiracy to launder money. In return for the plea and the defendant's cooperation, the government agreed

** The Honorable Richard Conway Casey, of the United States District Court for the Southern District of New York, sitting by designation.

that if it determined that the defendant had in fact cooperated fully, provided substantial assistance, and otherwise complied with the agreement, the government would "file a motion pursuant to U.S.S.G. § 5K1.1 and 18 U.S.C. § 3553(e)" in the district court acknowledging the defendant's substantial assistance. *See* Cooperation Agreement ¶ 6. Under applicable law, such a motion would have had the effect, *inter alia*, of freeing the defendant from any otherwise applicable statutory mandatory minimum sentence. *See* 18 U.S.C. § 3553(e). There were no further meetings between the defendant and the government.

At the time of sentencing, the government declined to file the section 3553(e) motion,[1] contending that the defendant had breached the cooperation agreement. The defendant moved for specific performance or, in the alternative, permission to withdraw his plea of guilty, arguing that the government had acted in bad faith in not making the section 3553(e) motion. The district court (Joanna Seybert, *Judge*) denied the defendant's motion and denied his request for an evidentiary hearing. Treating the Sentencing Guidelines as mandatory, the district court subsequently sentenced the defendant principally to 382 months' imprisonment.

On appeal, the defendant argues primarily that the government acted in bad faith in refusing to file the section 3553(e) motion. He seeks an order of this Court requiring the government to file the motion or, in the alternative, remanding the case to the district court for an evidentiary hearing as to the good faith of the government. The defendant also argues that the district court's mandatory application of the Sentencing Guidelines was unconstitu-

tional. We conclude that the defendant has made a sufficient showing to warrant an evidentiary hearing. We also conclude that under *United States v. Fagans*, 406 F.3d 138 (2d Cir.2005), the defendant is entitled to a remand for re-sentencing. We therefore vacate the district court's judgment and remand the case for the court to vacate the sentence and to conduct further proceedings.

## BACKGROUND

Between January 8, 2002 and April 30, 2002, the defendant—who the government alleges was involved in narcotics trafficking and other illicit activities—participated in seven proffer sessions with the government. On August 15, 2002, a federal grand jury handed down a fifteen count indictment charging him with, *inter alia*, conspiracy to distribute cocaine, possession of cocaine with intent to distribute, carrying and use of a firearm during and in relation to a drug trafficking crime, arson, possession of defaced firearms, possession of unregistered firearms and conspiracy to launder money. Subsequently, in September 2002, the defendant participated in two more proffer sessions. The government later acknowledged to the district court that it made "numerous arrests based on the information [the defendant] provide[d]" during these proffer sessions. Hearing Tr., July 15, 2004, at 17.

On October 4, 2002, the defendant entered into a cooperation agreement with the government. The agreement provided that the defendant would plead guilty to four counts in the August 15, 2002 indictment: (1) conspiracy to distribute cocaine; (2) use of a firearm in relation to a drug trafficking crime; (3) arson; and (4) con-

---

1. Although we generally refer to section 3553(e) throughout this opinion, our discussion applies to the government's promise to file a motion pursuant to both 18 U.S.C. § 3553(e) and U.S.S.G. § 5K1.1.

spiracy to launder money. The defendant also agreed to "provide truthful, complete and accurate information," to "cooperate fully," and "not to commit, or attempt to commit, any further crimes." Cooperation Agreement ¶¶ 3, 8.

In return for these promises and the defendant's plea of guilty, the cooperation agreement provided:

> If the [United States Attorney's] Office determines that the defendant has cooperated fully, provided substantial assistance to law enforcement authorities and otherwise complied with the terms of this agreement, the Office will file a motion pursuant to U.S.S.G. § 5K1.1 and 18 U.S.C. § 3553(e) with the sentencing Court setting forth the nature and extent of his cooperation. Such a motion will permit the Court, in its discretion, to impose a sentence below the applicable Sentencing Guidelines range and also below any applicable mandatory minimum sentence. In this connection, it is understood that a good faith determination by the Office as to whether the defendant has cooperated fully and provided substantial assistance and has otherwise complied with the terms of this agreement, and the Office's good faith assessment of the value, truthfulness, completeness and accuracy of the cooperation, shall be binding upon him. The defendant agrees that, in making this determination, the Office may consider facts known to it at this time.

*Id.* ¶ 6. It was also agreed that "[s]hould it be judged by the [government] that the defendant has failed to cooperate fully ... or has otherwise violated any provision of this agreement, the defendant will not be

released from his plea of guilty but th[e] [government] will be released from its obligations," including the obligation to file the section 5K1.1 and section 3553(e) motion. *Id.* ¶ 8. On October 7, 2002, the defendant pleaded guilty pursuant to the cooperation agreement.

There were no further meetings between the defendant and the government, nor was the defendant asked to testify or otherwise participate in any legal proceedings. But in a letter dated November 17, 2003, the United States Bureau of Alcohol, Tobacco and Firearms (the "ATF") wrote to the Assistant United States Attorney assigned to the defendant's case "in order to detail [the defendant's] lack of cooperation." ATF Letter at 1.[2] The letter referred to the nine proffer sessions that the defendant participated in with the government in 2002 and explained why, in the ATF's view, the defendant had lied during some of these sessions. For example, the letter stated that in an April 10, 2002,[3] proffer session and again on September 12 and September 19, 2002, the defendant said that he had never purchased drugs in a particular Southern state and was not involved in the drug trade there. *Id.* at 3–5. However, the ATF alleged, another defendant stated in a proffer session—the date of which is redacted from the letter—that the defendant in fact had traveled to that state for the express purpose of purchasing cocaine. *Id.* at 5.

The ATF letter further stated that on January 28, 2002, and again on September 12, 2002, the defendant was asked about his firearm "silencer" and allegedly responded that he had thrown it away. *Id.* at 2, 4. In fact, the ATF contended, a

---

**2.** The version of the letter in the record is labeled "Draft" and is not signed.

**3.** Many of the dates in the letter are listed as occurring in 2003. The government states that

the proffer sessions in fact occurred in 2002, which seems to be consistent with other material in the record.

silencer was recovered during a search of the defendant's home in April 2002. *Id.* at 4.

The ATF letter also stated that investigators had received information from neighbors of the defendant that shortly after his arrest, "persons unidentified arrived at [the defendant's] home and were seen going to and from the backyard as though they were removing something." *Id.* The letter clearly implied that the "persons unidentified" were removing cocaine from underground caches on the defendant's property. *Id.*

The ATF letter concluded that "[b]ased upon our investigation ... [i]t is our belief that [the defendant] has not been truthful and continues to withhold information.... [The defendant] is NOT entitled to a 5K1 letter." *Id.* at 6–7 (emphasis in original).

The government subsequently declined to make a substantial assistance motion in connection with the defendant's sentencing. The defendant moved for specific performance or, in the alternative, permission to withdraw his plea of guilty, arguing, *inter alia,* that, in declining to make the substantial assistance motion, the government had acted in bad faith.

On July 15, 2004, the district court heard oral argument on the defendant's motion. Counsel agreed that there were no proffer sessions or other meetings between the defendant and the government after the defendant entered into the cooperation agreement. Hearing Tr., July 15, 2004, at 9. The defendant's principal argument was that, assuming *arguendo* that he had not been truthful during some of the proffer sessions, the government had knowledge of his untruthfulness before the cooperation agreement was executed, and therefore could not properly "use [preagreement statements or actions] as bas[es] to breach [the defendant]." *Id.* at 12.

The government stated that, although it already had "a number of suspicions, a number of concerns because of the method by which [the defendant] responded to questions and the information he provided, many of which were inconsistent and had to be investigated," its doubts about the defendant's cooperation were not "confirm[ed]" until later, when the defendant's relative was arrested and further evidence related to the defendant's behavior was disclosed. *Id.; see also id.* at 16–17. The district court denied the defendant's request for an evidentiary hearing, denied the motion, and set a sentencing date. *Id.* at 14, 18–19.

Subsequently, the defendant argued to the district court, *inter alia,* that mandatory application of the United States Sentencing Guidelines would be unconstitutional. On September 21, 2004, the district court, treating the Guidelines as mandatory, sentenced the defendant principally to 382 months' imprisonment.

## DISCUSSION

### I. The Section 3553(e) and Section 5K1.1 Motion

*A. Standard of Review*

■ We review a district court's interpretation of a cooperation agreement de novo and examine its related findings of fact for clear error. *United States v. Reeves,* 296 F.3d 113, 115–16 (2d Cir.2002). Our case law is less than clear as to whether we similarly review de novo a district court's denial of a defendant's motion for an evidentiary hearing on the government's good faith or whether we review such a denial for abuse of discretion. *Compare United States v. Imtiaz,* 81 F.3d 262, 264 (2d Cir.1996) (per curiam) (appearing to apply de novo review and concluding that an evidentiary hearing was

not required), *with United States v. Leonard,* 50 F.3d 1152, 1157 (2d Cir.1995) (stating that "we address Leonard's contention that the district court, in determining whether the government acted in good faith, abused its discretion by failing to consider significant evidence and by failing to take important testimony," and then concluding that an evidentiary hearing was warranted). We need not decide which standard of review to apply here, however, because we reach the same conclusion applying either standard.

*B. Applicable Law*

The extent of our review of the government's decision not to file a substantial assistance motion depends on whether the defendant acted pursuant to a cooperation agreement. "[D]efendants who have no cooperation agreements are entitled to assurance that the government's motion is not withheld for some unconstitutional reason." *United States v. Brechner,* 99 F.3d 96, 99 (2d Cir.1996). "Thus, a defendant would be entitled to relief if a prosecutor refused to file a substantial-assistance motion, say, because of the defendant's race or religion" or for a reason "not rationally related to any legitimate Government end." *Wade v. United States,* 504 U.S. 181, 186, 112 S.Ct. 1840, 118 L.Ed.2d 524 (1992). In the absence of such constitutionally impermissible action, we cannot disturb the government's decision because the government has "a power, not a duty, to file a motion when a defendant has substantially assisted." *Id.* at 185, 112 S.Ct. 1840.

"However, where a plea agreement provides that the government will file a [section 3553(e) ] motion if it determines that the defendant has provided substantial assistance, a court's review of the government's decision not to file [the] motion is more searching." *Leonard,* 50

F.3d at 1157. The court "may review the agreement ... to see if the government has lived up to its end of the bargain." *Reeves,* 296 F.3d at 116 (citing *Leonard,* 50 F.3d at 1157). If, under the terms of the agreement, the government has discretion to determine the extent of the defendant's assistance, we review "whether the prosecutor has made its determination in good faith." *United States v. Rexach,* 896 F.2d 710, 714 (2d Cir.), *cert. denied,* 498 U.S. 969, 111 S.Ct. 433, 112 L.Ed.2d 417 (1990); *United States v. Khan,* 920 F.2d 1100, 1105 (2d Cir.1990) ("[W]here the explicit terms of a cooperation agreement leave the acceptance of the defendant's performance to the sole discretion of the prosecutor, that discretion is limited by the requirement that it be exercised fairly and in good faith."). The requirement that the government act in "good faith" demands only that the government have "honest dissatisfaction with the defendant's efforts." *Reeves,* 296 F.3d at 116.

> In a contract, where the agreement is conditioned on satisfaction of the obligor, the condition is not met "if the obligor is honestly, even though unreasonably dissatisfied." ... Thus, where the explicit terms of a cooperation agreement leave the acceptance of the defendant's performance to the judgment of the prosecutor, the prosecutor may reject the defendant's performance provided he or she is honestly dissatisfied.

*Rexach,* 896 F.2d at 713 (quoting Restatement (Second) of Contracts § 228, comment a (1981)).

We have made clear, however, that the government may not base its dissatisfaction with a defendant's performance of an agreement on facts known to the government at the time the agreement is executed. "Not only would it be unfair for

the government to rely upon ... known, pre-agreement circumstances as reasons for not moving [under section 3553(e)], it would have been fraudulent to have induced a defendant's plea with a promise that the government already knew it was not going to keep." *United States v. Knights,* 968 F.2d 1483, 1488 (2d Cir.1992); *see also Khan,* 920 F.2d at 1105 ("[A] presumption of fairness underlies agreement between the defendant and the prosecutor, so that when a prosecutor makes a promise and obtains in return cooperation from the defendant, the promise must be kept.").

■ A "fairly simple" procedure is used to determine whether an evidentiary hearing on the issue of good faith is warranted:

When a defendant claims that the government has acted in bad faith in refusing to move for a downward departure, the government may rebut this allegation by explaining its reasons for refusing to depart. The defendant must then make a showing of bad faith "to trigger some form of hearing on that issue."

*Knights,* 968 F.2d at 1487 (quoting *Khan,* 920 F.2d at 1106).

*C. The Instant Case*

■ As noted, both the defendant and the government agree that there were no proffer sessions or other meetings between the government and the defendant after they entered into the cooperation agreement. It also appears from the record

that the defendant was never asked to testify or otherwise participate in the course of any other prosecutions. If the government had "honest dissatisfaction with the defendant's efforts," *Reeves,* 296 F.3d at 116, then, such dissatisfaction must have been based upon events that occurred before the cooperation agreement was executed.[4] The question before us is whether, as the defendant contends, there is evidence that would support a finding that the relevant facts were known to the government at the time the agreement was executed. *See Knights,* 968 F.2d at 1488.[5]

Here, the government relies on four specific incidents that it contends constituted "ample good faith bases to declare [the defendant] in breach." Gov't Br. at 15. First, the government alleges that "[a]round December 31, 2001, on [the defendant's] direction, his associates recovered cocaine from a backyard safe, proceeds from the sale of which would be used to pay for [the defendant's] legal representation." *Id.* Second, the government states that on April 10, 2002, agents found an "undisclosed safe at [the defendant's] residence with eleven kilograms of cocaine inside; [the defendant] then provided the location of yet more previously unrevealed safes." *Id.* Third, the government alleges that although the defendant had stated on April 10, 2002, and on September 12 and 19, 2002, that he had never obtained drugs from the specified Southern state, "a wit-

---

4. Because the defendant does not make the argument, we need not decide whether, as a matter of law, the government can have a good faith belief that the defendant breached the agreement based on actions that occurred entirely before the agreement was signed. We note, however, that specific language in the agreement suggests that the government may consider pre-agreement actions in determining, post-agreement, whether the defendant has cooperated fully. *See* Cooperation Agreement ¶ 6.

5. As the district court put it at the time the defendant entered his guilty plea pursuant to the cooperation agreement, "[S]ir, you understand that the government is basing its promise on facts that it knows now. If they later on find out something that makes it inappropriate for them to recommend or make a 5K1 motion, they will be able to rely on the new facts they learn." Hearing Tr., Oct. 7, 2002, at 27.

ness described having taken four or five trips with [the defendant] to [the state] to purchase multiple kilograms of cocaine." *Id.* Finally, the government contends that "agents recovered a silencer from [the defendant's] residence on April 10, 2002 but on September 12, 2002 [the defendant] indicated that he had rendered the silencer inoperable and had disposed of it." *Id.* "The obvious and straightforward conclusion" based on these incidents, concludes the government, "is that [the defendant] breached the plea agreement." *Id.* at 16.[6]

We think it plain from the portion of the record made available to us by the parties that the government had knowledge of the second and fourth alleged misrepresentations long before the cooperation agreement was signed. The government says it found the cocaine-laden safe and the silencer at the defendant's residence on April 10, 2002. The defendant's asserted misrepresentations as to the safe and his silencer were thus known to the government to be untrue when they entered into the cooperation agreement in October, later that year.

As to the alleged misrepresentation concerning the defendant's alleged drug purchases, the portions of the record called to our attention by the parties does not reveal when the government's witness reported having taken trips with the defendant to the South to purchase cocaine. And the dates of the proffer session at which this was allegedly said are redacted in the copy of the ATF letter provided to this Court. It is noteworthy, however, that nowhere in the papers the government submitted to this Court does the government explicitly contend or point to

evidence that tends to show that the witness's statement was made after the cooperation agreement was executed in October 2002. We are therefore unable to determine on the present record whether the government knew that the defendant had lied about his activities in the South at the time the cooperation agreement was executed.

Nor is it clear whether the government knew before October 2002 of the defendant's alleged retrieval, by proxy, of cocaine from a safe on his property to be used to finance his defense. In this instance, the government does explicitly deny that it had pre-agreement knowledge. It asserts that, although the defendant had allegedly engaged in drug sales after his arrest in 2001, the government did not learn of such activities until a relative of the defendant was arrested in 2003, more than a year after the cooperation agreement was executed. The government has acknowledged, though, that before it entered into the agreement with the defendant, it suspected that the defendant had engaged in just such activities. *See* Hearing Tr., July 15, 2004, at 12. And, indeed, the ATF letter states that investigators learned in April 2002 (six months before the cooperation agreement was signed) that the defendant's associates "were seen going to and from the backyard as though they were removing something" around the previous New Year's Eve. ATF Letter at 4. The letter suggests that the ATF's belief, based on its having found "cutting agent" in backyard safes, was that the "something" was cocaine. *Id.* Despite its

---

6. We note that in addition to the four specific allegations discussed above, the government appears to suggest in the one-sentence conclusion to a pertinent section of its brief that the defendant committed other crimes after he pleaded guilty. *See* Gov't Br. at 16. The

government's conclusory assertion, however, does not follow from its premises: None of the factual allegations that precede the government's conclusion references an event that took place after October 7, 2002, the date on which the defendant pleaded guilty.

suspicions, however, the government contended before the district court that:

> [I]t wasn't until [the defendant's relative] was arrested that we got confirmation that in fact it was true ... it took some time for us to develop additional corroborative evidence to prove ... that in fact what our suspicions were were in fact true, that [the defendant] had ... continued his criminal conduct and had never intended to be truthful and honest with us.

Hearing Tr., July 15, 2004, at 12.

If the government indeed had nothing more than suspicions of post-arrest drug sales when the cooperation agreement was signed, and such suspicions were confirmed by the subsequent interrogation of another suspect, perhaps it could be said that the government had a good faith post-agreement basis upon which to declare the defendant to be in breach of the cooperation agreement. But that is not something we can address, let alone suggest an answer to, on that portion of the record the government has provided to this Court.

The defendant need not, of course, establish the government's bad faith in order to secure an evidentiary hearing; he must only "make a showing of bad faith." *Knights,* 968 F.2d at 1487. We think that, viewing the record—or at least that portion of it submitted to us by the parties—as a whole, the defendant has made such a showing. *Cf. id.* at 1488–89 (concluding that because four of the government's six proffered reasons "relate to circumstances that preceded the making of the agreement, and the government was aware of them at the time it promised to ... mak[e] the substantial-assistance motion," and the record contained no "finding, or evidence" that the government had a valid evidentiary basis for its only potentially legitimate proffered reason, a remand was necessary "for further proceedings to be focused upon the government's claimed bad faith"); *Leonard,* 50 F.3d at 1157–58 (concluding that a remand for "an evidentiary hearing to determine whether the government acted in good faith" was necessary because, *inter alia,* "[n]o record has been produced reflecting the events of [a proffer session], yet the government relies heavily on alleged statements made ... at the meeting in justifying its decision not to make the motion").

The government cites language in *Imtiaz* in which, characterizing prior opinions of this Court, we said that "unless the government's reasons are wholly insufficient, or unless the defendant's version of events, supported by at least some evidence, contradicts the government's explanation, no hearing is required." *Imtiaz,* 81 F.3d at 264 (internal citations omitted). Irrespective of whether this statement is binding on us here, we think that on this record, the defendant has indeed supported his version of events "with at least some evidence." As *Imtiaz* recognized, "[i]f the government explains its reasons [for a refusal to make a substantial assistance motion], the defendant must 'make a showing of bad faith to trigger some form of hearing on that issue.'" *Id.* (quoting *Knights,* 968 F.2d at 1487). For the reasons outlined above, we think that such a showing has been made.

## II. Mandatory Application of the Sentencing Guidelines

■■■ The defendant argues that he should be resentenced because the district court treated the Sentencing Guidelines as mandatory when it sentenced him. Because he made a timely objection in the district court, as the government acknowledges, he is entitled to be resentenced. *See Fagans,* 406 F.3d at 140–41.

\*\*\*

We have considered the defendant's remaining arguments and conclude that they are without merit.

## CONCLUSION

For the foregoing reasons, we vacate the district court's judgment and remand with instructions for the court to vacate the defendant's sentence, *see id.* at 142, and for further proceedings consistent with this opinion, including re-sentencing in conformity with *United States v. Booker*, 543 U.S. 220, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005).