10-3427(L)
USA v. OYEWUMI, ET AL.

UNITED STATES COURT OF APPEALS

FOR THE SECOND CIRCUIT

_____

August Term, 2011

(Argued February 6, 2012          Decided: March 29, 2012)

Docket Nos. 10-3427(Lead), 10-3911(Con), 10-4035(Con)

_____

UNITED STATES OF AMERICA,

*Appellee*,

−v.−

KAY OYEWUMI, TAIWO ADEKANBI, AKA TAIYE, ADEMILOLA OGUNMOKUN, AKA
JIMMY, AKA ABURO, AKA OLASUPO OGUNMOKUN,

*Defendants*,

FNU LNU, AKA TONY MCKINNON, AKA REGINAL DAVIS, AKA SAEED, AND TUNDE
OGUNRINKA, AKA BABA TOLANI,

*Defendants-Appellants*.

_____

Before:

WESLEY, CARNEY, *Circuit Judges*, CEDARBAUM, *District Judge*.[*]

_____

[*]Judge Miriam Goldman Cedarbaum, of the United States
District Court for the Southern District of New York, sitting by
designation.

Appeal from an order of the United States District Court for the Southern District of New York (Sullivan, *J.*), sentencing Defendant Appellant Saeed[1] to 110 months' imprisonment pursuant to Saeed's conviction, after a jury trial, for violations of 18 U.S.C. § 1001, 18 U.S.C. § 1028A(a)(1), (c)(4), and 21 U.S.C. § 846.

AFFIRMED.

_____

STEVEN R. PEIKIN (Alexander J. Willscher, Allison Caffarone, *on the brief*), Sullivan & Cromwell, New York, NY, *for Defendant-Appellant*.

DANIEL S. GOLDMAN, Assistant United States Attorney, (Katherine Polk Failla, Assistant United States Attorney, *on the brief*), *for* Preet Bharara, United States Attorney for the Southern District of New York, New York, NY.

_____

WESLEY, *Circuit Judge*:

Appellant Saeed appeals his convictions for aggravated identity theft and false statements, the district court's pre-trial denials of his motions to suppress statements made during a safety-valve proffer and for severance of Count One

---

[1] We refer herein to Defendant-Appellant as Saeed even though Defendant-Appellant's true identity remains unknown both to us and the government. Defendant-Appellant refers to himself, in his briefing, as Reginald Davis. We decline to use "Davis" to identify Defendant-Appellant, however, because the jury convicted him of aggravated identity theft based on his use of the Davis identity. We therefore refer to Defendant-Appellant as Saeed, which is a religious name he has used in the past.

from Counts Four and Six of the indictment, and his 110-month sentence.  We hold that (1) Saeed's conviction was supported by sufficient evidence; (2) the court's pre-trial decisions on Saeed's motions were not erroneous; and (3) Saeed's 110-month sentence is both procedurally and substantively reasonable.  Concluding that Saeed's claims on appeal have no merit, we affirm both his convictions and sentence.

**Background**

Following a jury trial, Saeed was convicted of conspiring to distribute heroin in violation of 21 U.S.C. § 846, aggravated identity theft in violation of 18 U.S.C. § 1028A(a)(1) & (c)(4), and making false statements on a matter within the jurisdiction of a federal agency in violation of 18 U.S.C. § 1001.

Saeed's criminal activity came to light after Customs and Border Patrol at Newark International Airport seized a FedEx package from India containing 787 grams of heroin. Immigration and Customs Enforcement ("ICE") agents executed a controlled delivery of the package to its intended Brooklyn address, which resulted in the arrest of two of Saeed's co-conspirators, Temitope Mohammed and Bolaji

Olaiye.  Subsequently, ICE received authorization to intercept calls over a cell phone belonging to Kay Oyewumi,[2] a leader of the heroin trafficking organization.  The intercepted calls implicated Saeed in the conspiracy and led to his arrest on April 30, 2009.

Saeed was initially charged with participating in a conspiracy to distribute, and to possess with intent to distribute, one kilogram or more of heroin in violation of 21 U.S.C. §§ 812, 841(a), 841(b)(1)(A), and 846.  During a post-arrest interview Saeed identified himself as Reginald Davis and admitted to some of his criminal activity.

On December 10, 2009, Saeed's counsel advised the government that his review of his client's record indicated that Saeed might be eligible for safety-valve relief pursuant to 18 U.S.C. § 3553(f).  The government responded that it would not agree to recommend safety-valve relief unless defendant revealed his true identity.  Despite the government's position regarding the safety valve, Saeed and his attorney met with the government on December 21, 2009,

_____

[2] Oyewumi is also an Appellant in this case.  His appeal as well as the appeal of Ogunrinka, another co-conspirator whose case was also consolidated with this one, is being decided in a summary order filed concurrently with this opinion.

to provide the government with information proving he was safety-valve eligible.

The meeting was held pursuant to a safety-valve proffer agreement signed by Saeed, Saeed's counsel, the Assistant United States Attorney, and a witness. During the safety-valve proffer, the government questioned Saeed about his identity. He identified himself (again) as Reginald Davis; claimed he was born in Houston, Texas in 1984; and provided what he asserted were the final four digits of his social security number. During the meeting, the government also asked Saeed questions about the narcotics conspiracy, his involvement with Oyewumi and Olaiye, the length of his participation in the conspiracy, and the amounts of heroin he distributed.

After the safety-valve proffer, the government further investigated Saeed's identity and informed the court that it might seek additional charges against Saeed for false statements and identity theft.

On March 4, 2010, the grand jury returned a superseding indictment charging Saeed with four new counts related to his false statements to the government about his identity during his post-arrest interview and safety-valve proffer.

Ultimately, the government dropped two of these counts and proceeded to trial only on: (1) Count One, involving the narcotics conspiracy; (2)Count Four, charging Saeed with making false statements about his identity during the safety-valve proffer in violation of 18 U.S.C. § 1001; and (3) Count Six, charging Saeed with aggravated identity theft in violation of 18 U.S.C. § 1028A based on his use of the identity of "Reginald Davis" during the safety valve proffer.

Saeed made a number of pre-trial motions that are now at issue on appeal. He moved to suppress statements he made during the safety-valve proffer, arguing that the government acted in bad faith when it continued the proffer after Saeed continued to lie about his identity. Saeed also moved to sever Count One from Counts Four and Six on the basis that joinder was improper pursuant to Federal Rules of Criminal Procedure 8 and 14. Both motions were denied. A jury trial followed and Saeed was found guilty on all counts.

During sentencing, the government opposed safety-valve relief on the basis that Saeed lied about his identity. The district court denied safety-valve relief, imposed an obstruction of justice enhancement, and ultimately sentenced

Saeed to 110 months' imprisonment. The 110-month sentence included 86 months' imprisonment for Counts One and Four, and 24 months' imprisonment (the mandatory minimum) to be served consecutively (as required by statute) on Count Six.

Saeed appeals the jury's verdict on Counts Four and Six, the district court's pretrial rulings, and his sentence.

**Discussion**

On appeal, Saeed argues that: (1) there was insufficient evidence to support the jury's guilty verdict on Counts Four and Six; (2) the district court erred in denying his motion to suppress his safety-valve statements; (3) the district court erred in denying his motion to sever Count One from Counts Four and Six; and (4) his sentence is both procedurally and substantively unreasonable. These arguments lack merit and there was no error below. We therefore affirm Saeed's conviction and sentence.

**I.    The Jury's Guilty Verdict on Counts Four and Six was Supported by Sufficient Evidence.**

Saeed argues that there was insufficient evidence to support the jury verdict on Counts Four and Six because the government failed to present evidence that proved, as

required by 18 U.S.C. § 1001, that his false statements were material.[3]  Under § 1001, a statement is material if it has "a natural tendency to influence, or [be] capable of influencing, the decision of the decisionmaking body to which it was addressed," *United States v. Gaudin*, 515 U.S. 506, 509 (1995), or if it is "capable of distracting government investigators' attention away from" a critical matter, *United States v. Stewart*, 433 F.3d 273, 318 (2d Cir. 2006).

Here, Saeed's lies about his identity during the safety-valve proffer clearly meet the definition of "material."  As a matter of common sense, providing a false identity to officials conducting a safety-valve proffer has *both* a "natural tendency to influence" and is "capable of distracting" those officials.  Indeed, there is little doubt that providing a false identity can result in a significant hindrance to law enforcement's investigation or prosecution of crimes: Giving a false identity can impede the

---

[3] In addressing Saeed's challenge to the sufficiency of the evidence, we "review the evidence in the light most favorable to the government, drawing all reasonable inferences in its favor." *United States v. Gaskin*, 364 F.3d 438, 459 (2d Cir. 2004).  We will only reverse a conviction "if no rational factfinder could have found the crimes charged proved beyond a reasonable doubt." *Id.* at 459-60.

government's ability to develop information about the subject crime, and to inform itself about the defendant and any relevant criminal history. *See, e.g.*, *United States v. Oladipupo*, 346 F.3d 384, 385-86 (2d Cir. 2003). Accordingly, any reasonable juror could have appropriately concluded that Saeed's lies about his identity were material to the government's investigation.

But the government offered more to support its burden of proof. It introduced testimony that the purpose of a safety-valve proffer is to determine eligibility for safety-valve relief and that both truthfulness and criminal history are elements to be considered in determining whether a defendant is safety-valve eligible.[4] This testimony was enough to support the jury's finding that a defendant's lies about his identity during a safety-valve proffer have a natural tendency to influence or are capable of distracting the government agents. That is *all* that is required for materiality. Thus, viewing the evidence in the light most

---

[4] Certainly, the government could have more explicitly connected the dots for the jury by introducing testimony regarding the way in which a defendant's truthful statements about his identity make it easier for the government to determine criminal history, or by presenting a witness to testify more specifically about the importance of truthfulness. But that the government could have done a better job does not mean it did not do a sufficient job.

favorable to the government-as we are required to do-the jury's finding of materiality was eminently reasonable. *See United States v. Libera*, 989 F.2d 596, 601 (2d Cir. 1993); *United States v. Stanley*, 928 F.2d 575, 576-77 (2d Cir. 1991).

Nevertheless, Appellant argues that a few out-of-circuit cases that found evidence insufficient to support a § 1001 conviction counsel in favor of reversing his conviction here. *See United States v. Ismail*, 97 F.3d 50 (4th Cir. 1996); *United States v. Kwiat*, 817 F.2d 440 (7th Cir. 1987). We disagree; the cases are inapposite. Both *Ismail* and *Kwiat* involved false statements made to one agency when the government had to show the statements were material to a different agency.

In *Ismail*, for example, defendant made a false statement to a bank, and the government argued the statement was material to the FDIC because the bank was FDIC insured. The Fourth Circuit noted that the false statement charge would have been appropriate if it was for "making a false material statement in a matter within the jurisdiction of the Secretary of Treasury, or the Internal Revenue Service," but was not appropriate where the charge was making a false

statement within the jurisdiction of the FDIC because the statement was not made to that agency.  97 F.3d at 60-61. *Ismail* thus holds only that where the connection between the agency to which the statement is made and the agency to which the statement is alleged to be material is tenuous, the government must do more to prove materiality.

Similarly, in *Kwiat*, the Seventh Circuit found that a false statement on a HUD form was not material to the FDIC where the government's only evidence tending to prove materiality was that the FDIC "sometimes looks at HUD-1 forms in banks' files to obtain information concerning real estate loan transactions."  817 F.2d at 445.  Again, the connection between the agency to which the statement was made and the agency to which it was alleged to be material was speculative.

The connection here is apparent and direct.  The false statement was made to the same government agency to which it was deemed material.  Moreover, materiality in this instance was obvious as a matter of common sense, and furthermore it was a finding more than adequately supported by testimony regarding the purposes and requirements of a safety-valve proffer.  We hold, therefore, that Saeed's convictions for

making false statements and aggravated identity theft were well supported by sufficient evidence and affirm his convictions on Counts Four and Six.

**II. The District Court Properly Denied Appellant's Motion to Suppress Statements Made During the Safety-Valve Proffer.[5]**

Saeed contends the district court erred in allowing the government to introduce statements he made during the safety-valve proffer held pursuant to 18 U.S.C. § 3553(f) because the government acted in bad faith in continuing the proffer after realizing Appellant did not plan to meet their pre-condition that he reveal his identity and because the government breached the proffer agreement. Appellant misunderstands the nature and purpose of a safety-valve proffer under § 3553(f).

Section 3553(f) gives defendants an opportunity to prove their eligibility for safety-valve relief by providing the government with "all information and evidence the

_____

[5] When a defendant challenges the denial of a suppression motion, we review the district court's factual findings for clear error, viewing the evidence in the light most favorable to the government, and the legal conclusions *de novo*. *United States v. Stewart*, 551 F.3d 187, 190-91 (2d Cir. 2009); *United States v. Yousef*, 327 F.3d 56, 144 (2d Cir. 2003).

defendant has concerning the offense or offenses that were part of the same course of conduct or of a common scheme or plan." 18 U.S.C. § 3553(f)(5).[6]

Once a defendant has made a safety-valve proffer, either in writing or through a debriefing, the government's role is to evaluate the defendant's information and make a recommendation to the court regarding the defendant's safety-valve eligibility. The court, and not the government, is ultimately charged with determining a defendant's eligibility for safety-valve relief under § 3553(f). *United States v. Gambino*, 106 F.3d 1105, 1110 (2d Cir. 1997).

In this case, Saeed, through counsel, requested a safety-valve debriefing having been advised by the government that it would recommend against safety-valve relief unless Saeed came "clean about his true identification." The government did not induce Saeed to

---

[6] The government is not required to participate in a debriefing requested by a defendant pursuant to § 3553(f). However, if it does not participate, its refusal to meet with the defendant may "weigh in favor of a finding that a defendant's written proffer is complete." *United States v. Schreiber*, 191 F.3d 103, 108 (2d Cir. 1999). To avoid such consequences, the government often participates in safety-valve debriefings when requested by the defendant.

participate in a safety-valve proffer. Saeed voluntarily attended the safety-valve proffer with his attorney and signed the proffer agreement, which informed him that any statements he made during the session would be fully admissible against him. Having been informed of the government's precondition for recommending safety-valve relief, Saeed nonetheless lied about his identity during the proffer.

Contrary to Saeed's argument, the government was under no obligation to save Saeed from himself once he failed to reveal his true identity. The government had an obligation to allow him to proffer pursuant to § 3553(f) to fulfill its duty to evaluate whether safety-valve relief was appropriate and make a recommendation to the judge. *Cf. United States v. Schreiber*, 191 F.3d 103, 108 (2d Cir. 1999). The government fully complied with its obligations under § 3553(f).

Appellant's claim that the government violated the proffer agreement is meritless. Saeed likens his safety-valve proffer agreement to a plea agreement and argues that cases like *United States v. Roe*, 445 F.3d 202, 207 (2d Cir. 2006), counsel in favor of suppressing his

proffer statements. But, safety-valve agreements are fundamentally different from plea agreements: in a safety-valve agreement, unlike in a plea agreement, the government makes no representation that it will seek any downward departure or recommend safety-valve relief. In Saeed's case, the government merely promised to evaluate Appellant's eligibility for safety-valve relief after the proffer, subject to the conditions that it made known to Appellant. That is exactly what it did. The government neither breached the agreement nor acted in bad faith in allowing the proffer to continue after Saeed lied about his identity. Saeed's safety-valve statements were, therefore, properly admissible at trial.

**III.  The District Court Properly Denied Appellant's Motion to Sever Count One from Counts Four and Six.[7]**

Saeed argues that the district court violated Federal Rules of Criminal Procedure 8(a) (joinder) and 14(a) (discretionary severance) by permitting a joint trial of his narcotics offenses and identity-related offenses. More

---

[7] We review a district court's ruling on joinder *de novo*. *United States v. Shellef*, 507 F.3d 82, 96 (2d Cir. 2007).

particularly, he contends that evidence of his participation in the heroin distribution conspiracy prejudiced the jury's consideration of the false statement and identity theft charges brought against him. Assuming without deciding that it was error to allow joinder, we easily conclude the error was harmless.

To compel reversal on appeal by reason of misjoinder, the defendant must demonstrate that joinder was erroneous under Rule 8(a) and that it "result[ed] in actual prejudice because it had substantial and injurious effect or influence in determining the jury's verdict." *United States v. Shellef*, 507 F.3d 82, 100 (2d Cir. 2007) (internal quotation marks omitted). Alternatively, if joinder was proper under Rule 8(a), defendant must show that the district court abused its discretion by failing nonetheless to order severance under Rule 14(a), and that the failure caused "prejudice so severe that his conviction constituted a miscarriage of justice." *United States v. Rittweger*, 524 F.3d 171, 179 (2d Cir. 2008).

Here, the independent evidence of Saeed's guilt on each count was so overwhelming that the jury's knowledge of Saeed's involvement in the drug conspiracy could not have

had a "substantial and injurious effect or influence" on the verdict, and Saeed's conviction in no way could be said to constitute a "miscarriage of justice." To focus only on the highlights: Agent DiFilippo, who participated in the proffer, testified that Saeed told him (among other things) that Saeed's name was "Reginald Lynn Davis"; that Saeed was born in Houston, Texas, in October 1984; and provided what he asserted were the last four digits of his social security number. These statements were wholly disproved by the testimony of the real Reginald Lynn Davis, who came to New York to testify at Saeed's trial. Davis verified that the information given by Saeed to Agent DiFilippo pertained not to Saeed, but to Davis. Davis's testimony was corroborated by his duly authenticated birth certificate, issued by the Texas Bureau of Vital Statistics.

In addition, the district court gave a limiting instruction directing the jury that, "[e]ach count is a separate offense or crime. Each crime must therefore be considered separately by you, and you must return a separate verdict on each count." Juries are presumed to follow such instructions. *United States v. Whitten*, 610 F.3d 168, 191 (2d Cir. 2010). On this record Saeed's generalized claim of

prejudice from the alleged misjoinder falls woefully short of demonstrating any actual "substantial and injurious effect or influence" such as would warrant reversal of his convictions on these counts.

**IV.  Appellant's 110-Month Sentence is Both Procedurally and Substantively Reasonable.**

*A. Procedural Reasonableness*

Saeed argues his sentence was procedurally unreasonable because the court denied safety-valve relief.  As discussed above, the court's denial of safety-valve relief was appropriate.  By lying about his identity Saeed failed to satisfy § 3553(f), which requires a defendant to truthfully provide the government with all the information he has about the offense and requires that a defendant not have more than one criminal history point.  18 U.S.C. § 3553(f)(1), (5).  A defendant's identity is part of the information about which section 3553(f)(5) requires a defendant to be truthful.  By lying about his identity, Saeed prevented the court from determining his criminal history.[8]  Therefore, denial of the

---

[8] For instance, in this case, if Saeed had two prior felony convictions he would have been eligible for a term of life imprisonment.  21 U.S.C § 841(b)(1)(a).  This example demonstrates that identity may be material for a number of reasons, and that the full extent of the benefit to Saeed of

safety-valve did not make Saeed's sentence procedurally unreasonable.

*B. Substantive Reasonableness*

Appellant's argument that his sentence is substantively unreasonable rests on his contention that the court relied on Appellant's false statements as the basis for multiple enhancements to his sentence.  Specifically, Saeed claims that the district court used his false-identity conduct as the basis for: (i) a 24-month consecutive sentence on the aggravated identity theft conviction; (ii) application of the Guidelines' obstruction-of-justice enhancement; (iii) denial of Saeed's application for an acceptance-of-responsibility adjustment; and (iv) denial of safety-valve relief.

As an initial matter, Appellant is mistaken when he argues that the court relied on his false-identity conduct when denying Appellant an acceptance-of-responsibility adjustment or as a basis for imposing a 24-month consecutive sentence on the conviction under 18 U.S.C. § 1028A.  The court denied acceptance points because although Saeed had earlier offered to plead guilty to distribution of the

lying about his identity cannot be known.

amount of heroin for which the jury ultimately found him responsible, he argued for acquittal at trial. The court pointed out that had Appellant admitted to the substantive offense and gone to trial only on the limited issue of the quantity of heroin for which he was responsible, he might have been eligible for acceptance points. The court imposed a 24-month consecutive sentence under 18 U.S.C. § 1028A because the statute required it. The statute also required the court not to consider this mandatory minimum in determining the appropriate sentence for the other convictions.

The court properly considered Appellant's lies about his identity in denying safety-valve relief, in applying an obstruction of justice enhancement, and in applying the sentencing factors in § 3553(a). We have previously recognized that "[m]ultiple adjustments are properly imposed . . . when they aim at different harms emanating from the same conduct." *United States v. Sabhnani*, 599 F.3d 215, 251 (2d Cir. 2010) (internal quotation marks omitted). That is exactly what happened here.

## Conclusion

Appellant's convictions on Counts Four and Six were supported by sufficient evidence; the judge's pre-trial rulings regarding suppression of statements made during the safety-valve proffer and the propriety of joinder were not error; and Appellant's sentence was both procedurally and substantively reasonable. Appellant's conviction and sentence are hereby **AFFIRMED**.