19-4052-cr
*United States v. Reyes-Batista*

# UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

## SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 9th day of February, two thousand twenty-one.

PRESENT: DENNIS JACOBS,
　　　　　　RICHARD J. SULLIVAN,
　　　　　　JOSEPH F. BIANCO,
　　　　　　　　*Circuit Judges*.

_____

UNITED STATES OF AMERICA,

　　　　　　　　　　　*Appellee*,

　　　v.　　　　　　　　　　　　　　　　　　No. 19-4052-cr

AMAURY VLADIMIR REYES-BATISTA, AKA
FERRAGAURY MEDINA, AKA PEDRO
AOVERIO AQUINO, AKA ROBERT BASTA,
AKA ROBERTO BATASTO, AKA ROBERT
BATISTE, AKA AMAURI REYES, AKA

ROBERTO BATISTA, AKA PEDRO AQUINO
ALEVERIO, AKA PEDRO ALVERIO AQUINO,

                    *Defendant-Appellant*.

_____

**FOR DEFENDANT-APPELLANT:**        Malvina Nathanson, New York, NY.

**FOR APPELLEE:**        HAROLD H. CHEN (Sandra S. Glover, *on the brief*), Assistant United States Attorneys, *for* John H. Durham, United States Attorney for the District of Connecticut, New Haven, CT.

Appeal from the United States District Court for the District of Connecticut (Stefan R. Underhill, *Chief Judge*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED**.

Defendant-Appellant Amaury Vladimir Reyes-Batista appeals a judgment of conviction entered by the district court (Underhill, *C.J.*). Reyes-Batista was arrested in February 2015 for participating in a scheme involving fraudulent tax refund checks in violation of 18 U.S.C. § 641. In a post-arrest interview, Reyes-Batista admitted to participating in the scheme, but provided federal agents with false identification information, including a false name, social security number, and birthplace. It was not until four years later, in June 2019, that Reyes-Batista

2

was eventually tried and found guilty of one count of conspiring to steal public money (18 U.S.C. § 371), eight substantive counts of theft of public money (18 U.S.C. §§ 641 and 2), and one count of making false statements to federal law enforcement officers (18 U.S.C. § 1001). Five months later, he was sentenced to time served and three years' supervised release, and ordered to pay $166,649.61 in restitution.

Reyes-Batista argues that the pre-trial delay violated his constitutional right to a speedy trial. He also argues that the district court should have dismissed the conspiracy charge against him because it violated the speedy indictment portion of the Speedy Trial Act. Finally, he argues that the district court should have dismissed the false statements charge because there was insufficient evidence to establish that the false statements he made concerning his identity were material. We assume the parties' familiarity with the facts, the record of prior proceedings, and the issues on appeal.

### *Speedy Trial*

This Court reviews a district court's decision on a motion to dismiss for a violation of the Sixth Amendment's speedy trial guarantee for abuse of discretion. *See United States v. Black*, 918 F.3d 243, 254 (2d Cir. 2019); *United States v. Cain*, 671

3

F.3d 271, 296 (2d Cir. 2012). The district court's factual findings are reviewed only for clear error. *Black*, 918 F.3d at 254.

The Sixth Amendment provides that, "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial." U.S. CONST. amend. VI. In *Barker v. Wingo*, the Supreme Court set out a four-part balancing test to evaluate whether that right has been violated. 407 U.S. 514 (1972). This test weighs (1) the "[l]ength of delay," (2) "the reason for the delay," (3) "the defendant's assertion of his right" to speedy trial, and (4) the "prejudice" caused by the delay. *Id.* at 530.

The first factor, the length of the delay, is a "triggering mechanism," which requires an inquiry into whether the delay is "presumptively prejudicial." *Id.* Here, the parties agree that the amount of time that elapsed between Reyes-Batista's arrest until his motion to dismiss, which was approximately 37 months, is sufficient to trigger an inquiry into the remaining three *Barker* factors. Pointing to those factors, Reyes-Batista argues that the *Barker* test weighs in favor of finding a violation of his Sixth Amendment right. We disagree.

The second *Barker* factor, the reason for the delay, "is often critical" in determining whether a defendant's speedy trial right has been violated. *United States v. Moreno*, 789 F.3d 72, 79 (2d Cir. 2015). In assessing the reason for the delay,

4

"different weights should be assigned to different reasons." *Barker*, 407 U.S. at 531. In this case, the lion's share of the delay was caused by Reyes-Batista, meaning that we accord the delay little weight.

To start, Reyes-Batista chose to replace his counsel on four separate occasions.[1] Each turnover in counsel was naturally accompanied by multiple weeks of delay as his new attorneys were required to get up to speed on the case. In addition, Reyes-Batista compounded this self-inflicted delay by engaging in extensive pre-trial motion practice. *See United States v. Vasquez*, 918 F.2d 329, 338 (2d Cir. 1990) (discounting a delay of 26 months because "most of th[at] [time] . . . was consumed by consideration of defendants' various pretrial motions"). On top of all that, Reyes-Batista moved for or consented to numerous continuances of jury selection and filed several speedy trial waivers. *See Black*, 918 F.3d at 262–63 (reasoning that defendants are responsible for any delays that accompanied their own extension requests); *see also United States v. Tigano*, 880 F.3d 602, 616–17 (2d Cir. 2018) (explaining that, "[u]nless the record shows otherwise, we normally

---

[1] One of these changes occurred after the district court resolved Reyes-Batista's motion to dismiss the indictment. Accordingly, the delay caused by that final change is not at issue in assessing this factor. Nevertheless, this final change of counsel is relevant to other components of the *Barker* test, such as whether Reyes-Batista had a legitimate desire to secure a speedy trial. *See Rayborn v. Scully*, 858 F.2d 84, 92–93 (2d Cir. 1988).

presume that a defense attorney is carrying out [the] client's chosen trial strategy and that any delays resulting from that strategy count against the defendant"). All told, then, the reasons behind most of the pre-trial delay favor the government, not Reyes-Batista.

The third *Barker* factor considers the defendant's assertion of his speedy trial right, as well as the frequency and strength of that assertion. *Barker*, 407 U.S. at 530–31. A defendant satisfies this prong by frequently, consistently, and explicitly asserting the right to a speedy trial. *See Black*, 918 F.3d at 263–64; *see also Cain*, 671 F.3d at 297 (same); *United States v. Vispi*, 545 F.2d 328, 334 (2d Cir. 1976) (same). Here again, this factor favors the government.

Reyes-Batista did not assert his right to a speedy trial "adamantly, consistently, and explicitly." *Tigano*, 880 F.3d at 617. To the contrary, Reyes-Batista asserted his right on only three occasions over the multiple years that his case was pending – and even then, he later withdrew one of those assertions. Moreover, Reyes-Batista frequently sought extensions, agreed to continuances, routinely filed motions to terminate counsel, and did not assert his speedy trial right for an entire year while separately litigating issues related to his immigration status. So, far from a good faith assertion, we conclude that Reyes-Batista invoked

6

this right "opportunistically." *United States v. Abad*, 514 F.3d 271, 275 (2d Cir. 2008). Such an assertion is heavily discounted under the *Barker* test, *see id.*, particularly where, as here, it is "manifestly apparent that [the] defendant ha[d] no serious interest" in proceeding promptly to trial, *Rayborn v. Scully*, 858 F.2d 84, 92 (2d Cir. 1988). Furthermore, after Reyes-Batista filed his motion to dismiss, he sought numerous trial continuances and once again attempted to change his counsel days before the trial was set to begin. These actions further support the conclusion that he had no genuine interest in obtaining a speedy trial. In light of the foregoing, the district court did not abuse its discretion in concluding that Reyes-Batista had no serious desire for a speedy trial.

The final *Barker* factor considers "whether the defendant was prejudiced by the failure to bring the case to trial more quickly." *Cain*, 671 F.3d at 296. We generally require a "showing of some significant trial-related disadvantage" to establish a constitutional violation. *Id.* at 297; *see also United States v. Williams*, 372 F.3d 96, 113 (2d Cir. 2004). Reyes-Batista's only argument that he was prejudiced by the pretrial delay is that, because he was in custody during that period, "he [was] detained for six months longer than the sentence he would receive after a conviction on all the charges." Reyes-Batista Br. at 33. But that is simply incorrect.

7

Reyes-Batista was detained for 38 months, which falls within the applicable U.S. Sentencing Guidelines range of 33 to 41 months' imprisonment. And while the district court ultimately sentenced Reyes-Batista to time served – a sentence for which the government itself advocated – Reyes-Batista has identified nothing in the record suggesting that he would have received a shorter sentence if he had proceeded to trial more rapidly. In fact, the district court indicated that "there[] [was] a strong argument that there should be an upward departure . . . for [Reyes-Batista's] criminal history." Gov't App'x at 453–54. On this record, then, there is no indication that the pre-trial delay caused Reyes-Batista to spend additional time in custody. Thus, Reyes-Batista has failed to demonstrate that he was prejudiced by the pre-trial delay.

\* \* \*

Other than the length of delay, the three other *Barker* factors all strongly indicate that Reyes-Batista's right to a speedy trial was not violated. As a result, we conclude that the district court did not abuse its discretion in refusing to dismiss the case.

8

## *Conspiracy Charge*

"When a defendant has preserved his [Speedy Trial Act] claims by making a timely motion to dismiss the indictment, we review the district court's findings of relevant facts for clear error and its application of the [Speedy Trial Act] to those facts *de novo*." *United States v. Holley*, 813 F.3d 117, 121 (2d Cir. 2016).

The Speedy Trial Act provides a sanction for the late filing of an indictment: "[i]f, in the case of any individual against whom a complaint is filed charging such individual with an offense, no indictment or information is filed within the [thirty-day] time limit required by section 3161(b) as extended by section 3161(h) . . . , such charge against that individual contained in such complaint shall be dismissed or otherwise dropped." 18 U.S.C. § 3162(a)(1). We have explained, however, that "when a complaint charge and an indictment charge involve overlapping or even identical facts, dismissal is not warranted under § 3162(a)(1) if the indictment charge requires proof of elements distinct from or in addition to those necessary to prove the crimes pleaded in the complaint." *United States v. Gaskin*, 364 F.3d 438, 453 (2d Cir. 2004).

On appeal, Reyes-Batista argues that the Speedy Trial Act required the district court to dismiss the conspiracy charge first raised in the government's

9

November 2016 superseding indictment. In short, he takes the position that the conspiracy charge covers the same conduct and activity alleged in the original criminal complaint filed in February 2015, meaning that the conspiracy charge "simply formalized a [count] that was inherent in the original complaint" and so was untimely when finally filed over a year later. Reyes-Batista Br. at 36.

Under *Gaskin*, however, the only relevant inquiry for Speedy Trial Act purposes is whether the new charge involves additional or distinct elements. *See* 364 F.3d at 453. This holds true even where "indictment charges 'arise from the same criminal episode as those specified in the original complaint or were known or reasonably should have been known at the time of the complaint.'" *Id.* at 451 (quoting *United States v. Napolitano*, 761 F.2d 135, 137 (2d Cir. 1985)).

A conspiracy charge implicates elements distinct from those needed to prove a charge of stealing public money. *Compare United States v. Lee*, 833 F.3d 56, 65–66 (2d Cir. 2016) (elements of charge for stealing public money under § 641), *with United States v. Pinckney*, 85 F.3d 4, 8 (2d Cir. 1996) (elements of a conspiracy charge). Accordingly, whether the two charges are predicated on overlapping facts is irrelevant. For that reason, the so-called "gilding doctrine," which Reyes-Batista encourages us to adopt as the law of the Circuit, is inapplicable to this case.

10

"[P]leadings that add elements to the government's burden of proof beyond those required for the lesser included charges in a complaint do more than gild the original charges." *Gaskin*, 364 F.3d at 456; *see also United States v. Cerome*, 277 F. App'x 85, 88 (2d Cir. 2008) (holding that "[i]nsofar as [the defendant] argues that the substantive robbery charge merely gilds the . . . conspiracy charge, [the defendant] is not entitled to relief because of the charges' differing elements and the absence of any circumstances that might warrant such relief"); *United States v. Cornelio*, 59 F. App'x 395, 397 (2d Cir. 2003) (explaining that, "for speedy trial and other purposes, a conspiracy charge is considered a separate and distinct charge from the accompanying substantive charge"); *United States v. Watkins*, 339 F.3d 167, 177 (3d Cir. 2003) (same); *United States v. Derose*, 74 F.3d 1177, 1184 (11th Cir. 1996) (same); *United States v. Velasquez*, 890 F.2d 717, 719–20 (5th Cir. 1989) (same).[2]

Accordingly, we agree with the district court that the conspiracy charge did not run afoul of the Speedy Trial Act.

---

[2] Although we do not take a position on the gilding doctrine, we note that "[t]he existence and contours of [that] doctrine . . . ha[ve] generally been viewed with skepticism." *Gaskin*, 364 F.3d at 456 (citing *Watkins*, 339 F.3d at 176–78).

### False Statements

On appeal, Reyes-Batista argues that there was insufficient evidence to demonstrate that the false statements he provided to federal agents regarding his name, social security number, and place of birth, were material to the investigation since those statements were made after he had already admitted his role in the scheme and could no longer influence the investigation. For the following reasons, we disagree.

We review *de novo* the sufficiency of the evidence underlying a conviction. *United States v. Alston*, 899 F.3d 135, 143 (2d Cir. 2018). In analyzing a sufficiency challenge, we "view the evidence in the light most favorable to the government, drawing all inferences in the government's favor and deferring to the jury's assessments of the witnesses' credibility." *United States v. Aguiar*, 737 F.3d 251, 264 (2d Cir. 2013) (internal quotation marks omitted).

To prove a false statement charge under 18 U.S.C. § 1001, the government must show that the defendant knowingly and willfully made a materially false, fictitious, or fraudulent statement in relation to a matter within the jurisdiction of a department or agency of the United States with knowledge that it was false, fictitious, or fraudulent. *United States v. Litvak*, 808 F.3d 160, 170 (2d Cir. 2015).

Under § 1001, a statement is material if it has "a natural tendency to influence, or [is] capable of influencing, the decision of the decisionmaking body to which it [is] addressed." *United States v. Gaudin*, 515 U.S. 506, 509 (1995) (quoting *Kungys v. United States*, 485 U.S. 759, 770 (1988)). A statement is also considered material "if it is capable of distracting government investigators' attention away from a critical matter." *United States v. Adekanbi*, 675 F.3d 178, 182 (2d Cir. 2012) (internal quotation marks omitted).

This Court has already determined that, "[a]s a matter of common sense," a defendant's false statements about his identity has both a "natural tendency to influence" and is "capable of distracting" the law enforcement officials to whom the statements are made. *Id.* at 183 (internal quotation marks omitted). This remains true even in cases where the defendant has already admitted his involvement in the crime; among other things, a false identity "can impede the government's ability to develop information about the subject crime, and to inform itself about the defendant and any relevant criminal history." *Id.*

So too here. Reyes-Batista's use of another person's identity in the post-arrest interview had a "natural tendency to influence" or was "capable of influencing" the government's investigation. *Gaudin*, 515 U.S. at 509 (internal

13

quotation marks omitted). These false statements required the government to spend time and resources verifying Reyes-Batista's true identity, and impeded the government's ability to determine critical information such as Reyes-Batista's criminal history and immigration status. *See Adekanbi*, 675 F.3d at 183. As a result, Reyes-Batista's conviction falls comfortably within the boundaries of § 1001.

### *Conclusion*

We have considered Reyes-Batista's remaining arguments and conclude that they are meritless. For the foregoing reasons, the judgment of the district court is **AFFIRMED**.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court

14